FILED

2014 MAR 24  PM 4: 10

CLERK US DISTRICT COURT
SANTA ANA

BY _____

NINA R. RINGGOLD, ESQ. (SBN (CA) 133735)
LAW OFFICE OF NINA R. RINGGOLD
9420 Reseda Blvd. #361
Northridge, CA  91324
Telephone: (818) 773-2409
Facsimile: (866) 340-4312
Email: nrringgold@aol.com
Attorney for Plaintiff Qadeer Azam

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| QADEER AZAM, | ) Case No.:  **SACV14-00456 JVS (DFMx)** |
| Plaintiff, | ) COMPLAINT |
| v. | ) (Jury Trial Demanded) |
| | ) |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, As Trustee of the Morgan Stanley ABS Capital I Inc., Trustee 2005-WMC6, Mortgage Pass-Through Certificates, Series 2005-WMC6; WMC MORTGAGE LLC as successor by merger to WMC Mortgage Corp.; GENERAL ELECTRIC CAPITAL CORPORATION; COUNTRYWIDE HOME LOAN SERVICING LP; COUNTRYWIDE HOME LOANS, INC; BANK OF AMERICA, NATIONAL ASSOCIATION  as successor by merger to BAC Home Loans Servicing LP FKA Countrywide Home Loans Servicing LP; GMAC MORTGAGE, LLC; RECONTRUST; EXECUTIVE TRUSTEE SERVICES, LLC; LANDSAFE, INC.; FIRST AMERICAN TITLE COMPANY; CURTIS PATRICK EDWARDS; and DOES 1-100, inclusive. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## CAUSES OF ACTION SPECIFIED IN THE COMPLAINT:

1. Fraud (Concealment, Misrepresentation) and Fraudulent Nondisclosure
2. Negligent Misrepresentation
3. Quiet Title
4. Wrongful Foreclosure  and Cancellation of Instruments
5. Declaratory, Injunctive, and Equitable Relief
6. Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq.
7. Violation Of The Fair Housing Act (42 U.S.C. §§ 3601-  3619)
8. Violation of Cal. Govt. Code § 12955 (Cal. Fair Employment and Housing Act) (FEHA)
9. Equal Credit Opportunity Act 15 U.S.C. § 1691
10. Violation of 42 U.S.C. § 1981, 1982, 1983, 1985, 1986, Thirteenth and Fourteenth Amendment
11. Violation of Business and Professions Code § 17200 et seq.
12. Violation of Cal. Civil Code § 51, 52
13. Violation of Cal. Civil Code § 52.1 & 52
14. Intentional Infliction of Emotional Distress
15. Negligent Infliction of Emotional Distress

COMES NOW Plaintiff QADEER AZAM, by and through his counsel, for his complaint against defendants herein as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1331.  Plaintiffs' claims arise from violation of rights guaranteed under the United States Constitution and laws of the United States.

2.      Jurisdiction is also predicated on 28 U.S.C. § 1343 (a)(1)-(3) which provides that the district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

   (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

   (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent; or

   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

3.       Supplemental jurisdiction in this court also exists over the state claims asserted herein in that they are so related to the claims within this court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Venue in this district is proper pursuant to 28 U.S.C. § 1391.  The property and various conduct in this action arose primarily in the State of California and in this district.

## DOCUMENTS ATTACHED AS EXHIBITS

5.      In this complaint plaintiff attaches certain recorded documents and other documents.  (Exhibits Bates Nos. 1-52).  However he expressly rejects the notion that they are true representations of the facts or that the persons signing the document are functioning with proper authority or that the items are truthful or that proper notary practices used or that the items were served on plaintiff on the date specified in the document. The documents are attached for the purposes of demonstrating the chronology and series of fraudulent transactions which have been used in this case.

## PARTIES

6.      Plaintiff is citizen of the State of California and of the United States.    His national origin is the country of Pakistan and he is Pakistani.[1] At all times relevant to this action, plaintiff owned real property commonly known as 1891 Caspian Avenue, Long Beach, CA 90810 ("the property").

7.      Plaintiff is informed and believes and thereon alleges that Wells Fargo Bank, National Association, As Trustee of the Morgan Stanley ABS Capital I Inc., Trustee 2005-WMC6, Mortgage Pass-Through Certificates, Series 2005-WMC6 (" SECURITIZED TRUST") is doing business in the State of California with its main office in Columbia,

---

[1] Plaintiff is a racial minority.  See <u>Shamin v. Siemens</u>, 854 F.Supp.2d 496 (E.D. Ill. 2012)(Pakistani is racial minority), <u>Sharre Tefila Congregation v. Cobb</u> 481 U.S. 615 (1987) (Jews can state a claim under 42 U.S.C. § 1982 as distinct race); <u>Saint Francis College v. Al-Khazraji</u>, 481 U.S. 604 (1987)(persons of Arabian ancestry may be protected from race discrimination).

Maryland.  The SECURITIZED TRUST is a trust created and existing under the laws of the State of New York. (SEC 8-K dated August 11, 2005, File No. 333-121914-06, attaching Pooling and Servicing Agreement ("PSA") dated as of July 1, 2005 with cutoff date of July 1, 2005).  Plaintiff is informed and believes and thereon alleges that SECURITIZED TRUST consists of a pool of residential mortgage notes allegedly secured by liens on residential real estate.  Plaintiff is informed and believes and therefore alleges that the SECURITIZED TRUST has no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of investment.

8.      Plaintiff alleges that one purpose of the PSA is to document that in the regular course of business the manner in which defendants are to originate and acquire mortgage loans and to document and confirm the terms and conditions under which the SECURITIZED TRUST will acquire the mortgage loans so originated.

9.      Plaintiff is informed and believes and thereon alleges that WMC Mortgage Corp originated the residential mortgage loan or originated said loan with others.  WMC Mortgage Corp. was licensed by the Connecticut Department of Banking from 1995 to 2007 as a Mortgage Lender/Broker.  Plaintiff is informed and believes and thereon alleges that WMC Mortgage Corp. was a subsidiary of General Electric Capital Corporation and that  WMC Mortgage LLC is a limited liability company and organized under the laws of the State of Delaware with its principal place of business in Woodland Hills, California. Plaintiff is informed and believes and thereon alleges that WMC Mortgage LLC is the successor by merger with WMC Mortgage Corp.  ("WMC").

10.     Plaintiff is informed and believes and thereon alleges that General Electric Capital Corporation ("GE") is a company organized under the laws of the State of Delaware with its principal place of business in Norwalk, Connecticut.  Plaintiff is

informed and believes that GE acquired WMC in or about 2004 and in or about December 2007 GE sold its mortgage business including the operations of WMC.

11.     Plaintiff is informed and believes and thereon alleged that Countrywide Bank Home Loan Servicing LP is the Servicer under the pooling and servicing agreement of the SECURITIZED TRUST.  Countrywide Bank Home Loans, Inc. is a New York incorporated wholly owned subsidiary of Countrywide Financial Corporation with its principal business office in Calabasas, California.  (collectively referred to as "CHL").  Although not identified as a lender on the promissory note, CHL is identified on Federal Tax Form 1098 as the lender receiving the interest payments from plaintiff in for at least the tax year 2007.  (Fed. Tax Id 13-2631719).  Therefore plaintiff is informed and believes and thereon alleges that CHL is both a servicer and an originator of the loan at issue in this action.  CHL is a wholly-owned indirect subsidiary of Bank of America Corporation as of July 1, 2008.  This was as a result of Bank of America Corporation's acquisition of Countrywide Financial Corporation.

12.     Plaintiff is informed and believes and thereon alleges that Bank Of America, National Association As Successor By Merger To BAC Home Loans Servicing LP FKA Countrywide Home Loans Servicing LLP is an entity conducting business in this state based on the acquisition of CHL and takeover of operations of BAC Home Loans Servicing.  Plaintiff is informed and believes and thereon alleges that on or about July 11, 2011 Bank of America, National Association as the parent company transferred all loans serviced  by BAC Home Loan Servicing to itself. ("BANA").

13.     Plaintiff is informed and believes and thereon alleges that GMAC Mortgage, LLC is a limited liability corporation conducting business in this state and erroneously

claiming to be a lender of plaintiff after GE sold its interest in WMC in 2007. ("GMAC")(See BS 19-21).

14.    Plaintiff is informed and believes that Recontrust is a national financial services association doing business in the State of California and is identified as the trustee on the deed of trust.  ("RECONTRUST").

15.    Plaintiff is informed and believes and thereon alleges that Executive Trustee Services, LLC is a limited liability corporation conducting business in this state and it claims to be a substituted trustee on the relevant deed of trust by virtue of action of GMAC. ("EXECUTIVE"). (See Ex BS 19-21).

16.    Plaintiff is informed and believes and thereon alleges that LandSafe, Inc. is a Delaware corporation headquartered in Plano, Texas and it conducts business in this state.  Plaintiff is informed and believes and thereon alleges that it various services including financial services, loan closing product and services, appraisal services, and default or foreclosure services.  Plaintiff is informed and believes and thereon alleges that LandSafe, Inc. is a subsidiary of Countrywide Financial.  ("LANDSAFE")

17.    Plaintiff is informed and believes and thereon alleges that First American Title Company conducts business in this jurisdiction and it is the current title insurer for the property at issue in this case. ("FATC")

18.    Plaintiff is informed and believes and thereon alleges that Curtis Patrick Edwards is a citizen of the State of California and of the United States, and he is the current owner of the property and is the person upon which the claim of quiet title is directed to in this action. ("EDWARDS").

19.    Plaintiff is ignorant of the true identify and capacity of defendants designated as Does 1-100, but will amend the Complaint when their identities have been ascertained.

Plaintiff alleges on information and belief, however, that each and every Doe defendant is in some manner responsible for the acts, and conduct of the other defendants, and were, and are responsible for and the proximate cause of the injuries, damages, and harm, incurred by plaintiff.  Plaintiff further alleges on information and belief that each such designated defendant acted, and acts as the authorized agent, representative, and associate of the other defendants in doing the things alleged herein.

20.     Any applicable statute of limitation period has been tolled by the defendant's continuing, knowing, and active concealment of the facts alleged herein.  Despite exercising reasonable diligence, plaintiff could not have discovered, did not discovery, and was prevented from discovering, the wrongdoing complained of herein.

21.     Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of herein.  The purpose and effect of the conspiracy, common enterprise, and common course of conduct complained of was, inter alia, to financially benefit defendants at the expense of plaintiff by engaging in fraudulent activities. Defendants accomplished their conspiracy, common enterprise, and common course of conduct by misrepresenting and concealing material information regarding the servicing of loans, claim for insurance against the government, appraisal and underwriting practices, discriminatory targeting of high cost products to racial and language minorities, and by taking steps and making statements in furtherance of their wrongdoing as specified herein.  Each defendant was a direct, necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of herein, and was aware of its overall contribution to and furtherance thereof.  Defendants' wrongful

acts include, inter alia, all of the acts that each of them are alleged to have committed in furtherance of the wrongful conduct complained of herein.

22.     Whenever reference is made in this complaint to any act of any defendant, that allegation shall mean that each defendant acted individually and jointly with the other defendants.

23.     Any allegation about acts of any corporate or other business defendants means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

24.     At all relevant times, each defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint.  Additionally, some or all of the defendants acted as the agent of the other defendants, and all of the defendants acted within the scope of their agency if acting as an agent of the other.

25.     At all relevant times, each defendant knew or realized that the other defendants were engaging in or planned to engage in the violations of law alleged in this complaint.  Knowing or realizing that the other defendants were engaging in or planning to engage in unlawful conduct, each defendant nevertheless facilitated the commission of those unlawful acts.  Each defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other defendants in the unlawful conduct.

26.     Plaintiff is informed and believes and thereon alleges that all times herein mentioned each of the defendants was the agent and employee of the remaining

defendants in doing the things hereinafter alleged, was acting without the course and scope of such agency.

## GENERAL ALLEGATIONS

27.     Plaintiff is informed and believes and thereon alleged in or about 2003 he purchased the property as is residence and that CHL provided the loan in the approximate amount of $445,900.  Title was taken as a married man as his sole and separate property.

28.     Plaintiff is informed and believes and there on alleges that in April 2005 that the property was refinanced with WMC, GE,  and/or CHL.  (BS 1-18).  Although the deed of trust specifies WMC, as indicated above tax documents specify the lender as CHL and based on information and brief plaintiff contends GE purchased WMC prior to the refinancing.  The deed of trust identifies WMC as the lender and identifies the trustee as Westwood Associates.   Mortgage Electronic Registration Systems ("MERS") was named solely as a nominee for the lender identified as WMC and not any other lender.  MERS had no security interest in *title* of the property as a true beneficiary under the deed of trust. (i.e. it was solely named as a nominee of the actual beneficiary and it did not fund or purchase plaintiff's loan).

29.     July 1, 2015 was the cutoff date for the PSA of the SECURITIZED TRUST.

30.     On or About June 15, 2007 GMAC purporting to act as a lender authorized MERS to substitute EXECUTIVE as a trustee in lieu of Westwood Associates and it falsely claimed there existed a document recorded in the State of California.  (BS 19-21).

31.     The deed of trust only allows a lender to appoint a successor trustee by an instrument executed and acknowledged by the lender and recorded in the county were the property is located.  The instrument is required to contain the *name of the original*

*lender*, trustee, and borrower, the book and age where the security instrument is recorded and the name and address of the successor trustee.  (See ¶24 of the deed of trust recorded on 4.18.05, BS 13).  The June 15, 2007 substitution of trustee did not comply with ¶24 of the deed of trust recorded on 4.18.05.

32.     There does not exist a substitution of trustee for the deed of trust changing EXECUTIVE as a trustee to RECONTRUST as a trustee.

33.     In or about December 2007 CHL provided a form 1098 statement to plaintiff specifying its tax identification number and this tax record specified that CHL was the lender.

34.     Plaintiff is informed and believes and thereon alleges that on or about February 5, 2009 CHL sent a notice of acceleration of the mortgage claiming that it was pursuing this action on behalf of an unspecified "holder of the promissory note".  (BS 25-27). Plaintiff repeatedly made contact with each contact number provided attempting to enter into a loan modification. Plaintiff complied with all requests and provided requested information and never obtained any good faith response to his calls or submissions. Plaintiff was led to believe there was an engagement of a loan modification process.

35.     Plaintiff is informed and believes and thereon alleges that on or about July 14, 2009 a notice of default and election to seal was recorded. The notice was signed by RECONTRUST as an agent for an unspecified lender beneficiary and signed by LANDSAFE as an attorney in fact for RECONTRUST.  Neither RECONTRUST nor LANDSAFE were trustees or agents for a beneficiary under the deed of trust.  The notice directed plaintiff to contact BAC Home Loan Servicing LP.  The notice falsely stated that plaintiff was contacted to assess his financial circumstance and to explore options to avoid

foreclosure.  Moreover, there did not exist authority under the deed of trust to delegate trustee duties to LANDSAFE.  (BS 28-32)

36.    Plaintiff is informed and believes and thereon alleges that on or about December 22, 2009 that MERS caused to be recorded a substitution of trustee erroneously claiming:

a.    It was the original beneficiary under the deed of trust

b.    That it was substituting RECONTRUST as trustee in lieu of Westwood Associates when the substituted trustee from June 15, 2007 was EXECUTIVE. (BS 19-21, 33-35).

c. Again, the  December 22, 2009 substitution of trustee did not comply with ¶24  of the deed of trust recorded on 4.18.05.  Irrespective of whether Westwood Associates or EXECUTIVE was the predecessor and existing trustee, the substitution did not comply with ¶24 of the deed of trust recorded on 4.18.05.

37.    Plaintiff is informed and believes and thereon alleges that by December 22, 2009 GE had sold of all assets of WMC and the FBI and the Justice Department had launched investigations into the operations of WMC.  Plaintiff is also informed and believes and thereon alleges that by the end of 2003 that WMC as producing $8 billion a year in subprime home loans.

38.    Plaintiff is informed and believes and thereon alleges that on or about December 22, 2009 that RECONTRUST caused to be recorded a notice of trustee sale without specification of a beneficiary, when it was not the trustee, and with an improper California declaration.  (BS 36-39).

39.    Plaintiff is informed and believes and thereon alleges that again or about January 5, 2010 RECONTRUST caused to be recorded a notice of trustee sale without

specification of a beneficiary, when it was not the trustee, and with an improper California declaration.  (BS 40-43).

40.     On March 29, 2010 BAC Home Loan Servicing LP (BANA) acknowledged that it had received information of contacts of plaintiff to obtain a loan modification.

41.     Although defendants claim that a public auction took place on September 29, 2010 on the front entrance of the Pomona Superior Court, no such public auction took place.

42.     By what appears to be documents prepared after the fact, MERS made a assignment of a deed of trust to the SECURITIZED TRUST after the cutoff date for the SECURITIZED TRUST under the PSA.  MERS was not a trustee or substitute trustee or a beneficiary.  There was no legal authority to make a post-closing assignment and MERS was not a lender.  The trustee deed upon sale specifies the grantee  and beneficiary as the SECURITIZED TRUST.  It specifies that the amount paid at a "public auction" was $339,750.00.  RECONSTRUST signed the trustee deed upon sale when it was not a trustee. (BS 44-52).

43.     Plaintiff is informed and believes and thereon alleges that on January 20, 2011 BANA sent out a tax statement, Form 1099A re Acquisition or Abandonment of Secured Property By Lender (Fed. Tax Id. 94-1687665) claiming that the principal balance was 565,636.65 and the fair market value was **$339,750.00** and the lender was BANA.  During the entire time from the notice of acceleration dated February 5, 2009 until the January 20, 2011 tax statement had plaintiff been allowed to negotiate a loan modification at the fair market value.  Five months later on approximately June 1, 2011 BANA then claimed that the alleged debt was **$703,530.79**.

11

44.     Although there did not exist a valid sale or transfer, plaintiff is informed and believes and thereon alleges that SECURITIZED TRUST transferred the property. Plaintiff is informed and believes and thereon alleges that on or about June 26, 2012 the property was transferred to EDWARDS and that FATC provided title insurance for the property.

45.     **On or about November 19, 2012 BANA expressly rejected plaintiff's request for a release of copies of assignments of the deed of trust.**  This is despite the fact that 12 CFS § 228.39 expressly requires disclosure of mortgage transfers.

46.     Plaintiff is informed and believes and thereon alleges:

a.     Under the PSA Morgan Stanley ABS Capital I Inc. is the Depositor, CHL is the Servicer, WMC the Responsible Party, and Wells Fargo Bank National Association the Trustee.

b.     MERS purported to assign to the SECURITIZED TRUST in 2010 on behalf of an unidentified lender the beneficial interest under the deed of trust and this was long after the July 1, 2005 closing date for the   SECURITIZED TRUST.

c.     The note was not duly endorsed, transferred and delivered to the trust prior to its closing date of July 1, 2005.

d.     In accord with Article II of the PSA "Conveyance of Mortgage Loans: Representation and Warranties" the Depositor Morgan Stanley ABS Capital I Inc. indicated that it had made delivery and the trustee Wells Fargo Bank, NA acknowledged transfer.  However this had not taken place as to plaintiff's loan.

e.     The PSA also specifies that  Date Tape Information was delivered.  Such information is necessary to identify specific loans and their terms as of the closing date. However this had not taken place as to plaintiff's loan.

f.      The PSA provided full authority for the CHL and its subservicers to reasonably negotiate loan modifications.

g.      Schedule III of the PSA the Responsible Party WMC provided representations and warranties of:

(i)  Compliance with state and federal law including without limitation, law pertaining usury interest, truth in lending, real estate settlement procedures, consumer credit protection, equal credit opportunity, disclosure and all predatory and abusive lending laws applicable to the mortgage loan,

(ii) Compliance with underwriting standards,

(iii) A Mortgage file containing an appraisal of the related Mortgage Property signed prior to approval of the loan applicable by a qualified appraiser without a direct or indirect interest in the property or in any loan made on the security thereof and whose compensation is not affected by the approval or disapproval of the loan. Also that the appraiser satisfied the requirements of all Fannie Mac or Freddie Mac and the Underwriting Guidelines and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989,

(iv) The fact that none of the loans were high risk or predatory and were "in compliance with the anti-predatory lending eligibility for purchase requirements of Fannie Mae Guides,"

(v) The fact that the mortgagor was not encouraged or required to select a mortgage offered by WMC which was higher in cost when they qualified for a lower cost loan.

47.      Section 203 (b) of the National Housing Act, as amended, 12 U.S.C. § § 1707 et seq at § 1709 (b) authorizes HUD to insure lenders against losses on mortgage loans.

(FHA mortgage insurance). The FHA program is designed to help low and moderate income families become homeowners. If the homeowner fails to make payments on the mortgage loan and the mortgage holder forecloses on the property HUD will pay the mortgage holder the balance of the loan (together with interest due and other costs). Therefore HUD seeks to ensure (and federal law requires) that appraisals reporting values on FHA backed loans are accurate and reflect actual market values. Plaintiff is informed and believes and thereon alleges that his loan was an FHA loan as evident by the Fannie Mac or Freddie Mac uniform deed of trust instrument. (BS 1-18). If an appraisal has a falsely inflated value and the borrower defaults then the government repays the lender at the fraudulently increase amount of the mortgage. Plaintiff is informed and believes and thereon alleges that both Countrywide and WMC provided falsely inflated appraisals and provided loans to create a default so as to obtain payment from the government (i.e. FHA mortgage insurance). Additionally, to insure payment from the government defendants refused to reasonably negotiate loan modifications. For example, although plaintiff claims no public sale took place, the bid price at the auction was specified $339,750 and BANA reported this on the Form 1099A on January 20, 2011. However a few months later BANA claimed the debt owed was $703,530.79.

48.     In a mortgage securitization scenario the actual holder of the mortgage is an entity other than the originator of the loan and in those instances the originator (e.g.) WMC was paid by a third party for value of the FHA loan.

49.     Both Countrywide, its affiliates including LANDSAFE, and GE and WMC became dominant players in the mortgage industry instigating corrupt underwriting and appraisal practices. Plaintiff is informed and believes and thereon alleges that LANDSAFE is an affiliate of CHL. Plaintiff is informed and believes that LANDSAFE

14

was an appraiser in the original 2003 loan with Countrywide and that CHL continued after the refinance with WMC.  LANDSCAPE continued in its conflicting and affiliate role with Countrywide.  (See BS 26-27, 30 (signatory for RECONTRUST), 34, 41 (LANDSAFE title), and 45, 47 (LANDSAFE default).  In other words, from origination and refinancing until the alleged default (and government payout)  ---  the related defendants always intended a default and always intended to direct racial and language minority borrowers (like plaintiff) into high risk loans even when they qualified for lower costs loans.

50.    The persons targeted for the higher costs loans of WMC, GE, and CHL are racial and language minorities like plaintiff.

51.    Plaintiff is informed and believes that the WMC loan did not meet the standards of the National Housing Act or appraisal standards.

52.    As part of a business strategy Countrywide, CHL, GE and WMC targeted racial and language minorities for higher costs and risks loans for their home mortgages than White borrowers.  Because of the targeted nature of the business practice, the practice was not based on creditworthiness or other objective criteria but based on race or national origin. Plaintiff is informed and believes and thereon alleges that he was placed in a subprime loan when similarly qualified White borrowers received prime loans. Moreover, plaintiff alleges that racial and language minorities as compared to White borrowers received higher interest rates, excessive fees, and penalties, not based on objective and evenly applied criteria.

53.    Plaintiff is informed and believes and thereon alleges that in June 2011 that a survey of large national lenders by the Office of the Comptroller of the Currency reported that 28.1 percent of subprime loans nationwide were seriously delinquent or in foreclosure as compared to 5.5 of prime loans.  Plaintiff is informed and believes and

thereon alleges that WMC has been under investigation by the FBI and the Department of Justice and on December 28, 2011 Countrywide entered into a consent order which in part required it to stop originating residential loans.[2]

## FIRST CAUSE OF ACTION

**Fraud (Concealment, Misrepresentation) and Fraudulent Nondisclosure
(Against All Defendants, Except EDWARDS and FATC)**

54.    Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

55.    Plaintiff believes and upon such belief contends that defendants misrepresented and/or concealed the true facts regarding the transfer of plaintiff's notice and deed of trust by causing it to be assigned into the SECURITIZED TRUST after the closing date.  Plaintiff is further informed and believes and thereon alleges that the note in this case was never actually transferred or delivered by WMC, GE, CHL, GMAC or any other defendant to the Depositor Morgan Stanley ABS Capital I Inc. and by the Depositor to the Custodian on behalf of the trustee for the SECURITIZED TRUST prior to the closing date.

56.    Plaintiff is informed and believes and thereon alleges that there is no indication that plaintiff's loan was transferred into the SECURITIZED TRUST pursuant to the PSA before the closing date, as it is not listed in any documents filed by the SECURITIZED TRUST and available to the public at www.edgar.gov. Accordingly plaintiff alleges that the note in this case was never lawfully negotiated and physically delivered to the SECURITIZED TRUST.  The corporate assignment dated October 8, 2010 by a nominee long after the closing date was ineffective as the SECURITIZED TRUST could not have

---

[2] (See Consent Order in *United States of America v. Countrywide*, 11-cv-10540 PSG-AJW (Dkt 4, December 28, 2011)).

accepted the deed of trust after the closing date pursuant to the PSA and the requirements of a REMIC Trust, thereby rendering the foreclosure of the property, the notice of default, notice of trustee sale, and trustee deed upon seal, void ab initio.  (BS 28-32, 36-43, 47-52).

57.    Plaintiff believes and upon such belief contends that defendants, and each of them, acted with the intent to defraud plaintiff and the public regarding the status of plaintiff's note.  Defendant, and each of them, also knew that the act of recording the corporate assignment of deed of trust and other acts without legal authority would cause plaintiff to rely upon defendants' actions by attempting to negotiate a loan modification.

58.    Plaintiff is informed and believes and upon such belief contends that GMAC falsely caused to be recorded on June 15, 2007 a substitution of trustee erroneously identifying MERS to be identified as an original beneficiary by document notarized in the State of Iowa; that GMAC was aware that MERS was not an original beneficiary and that there was no recorded instrument dated February 16, 2006 in the County of Los Angeles. (BS 20). Plaintiff is informed and believes and thereon alleges that this coincided with GE's exodus from the affairs and operation of WMC and that at that point there was not a lender beneficiary authorizing the subsequent events.

59.    Plaintiff is informed and believes and thereon alleges that CHL falsely engaged a notice of intent to accelerate the loan on February 5, 2009 when it was not a holder of a promissory note and was not a loan servicer. CHL was not a loan service on February 5, 2009  because BANA had taking over loan servicing responsibilities on or about July 1, 2008.  (BS 25-27).  CHL concealed the lack of actual authority, refused to reasonably address the requested loan modification, and never intended to address such possibilities with plaintiff although it was aware of the inflated appraisal and predatory lending practices and collusive conduct with LANDSAFE and other defendants.

60.  WMC, BANA, and CHL (using its affiliate LANDSAFE entities) and other defendants falsely

. a. caused or advanced or facilitated the recording of a notice of default of and election to sell (using LANDSAFE Title and RECONTRUST) on July 14, 2009 (1) after BANA had taken over servicing of the loan, (2) never identifying a lender in the notice, (3) identifying LANDSAFE as an agent for an entity which was not the trustee in the notice, (4) , falsely claiming that BANA had contacted the borrower to assess financial situation and explore options in the notice, and (5) giving a contact to make a payment arrangement in the notice as MERS c/o BAC Home Loans Servicing at a Countrywide location (where no one was actually processing or responding to plaintiff's inquiries or attempts to obtain a loan modification). The notice falsely states that the "present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, NA., such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby".  (BS 28-31).   Plaintiff is informed and believes and thereon alleges that as of July 14, 2009 defendants cannot identify a beneficiary lender which had made such demand or had authority to make such demand.

b.     Paragraph 22 of the deed of trust provides that a lender is to give notice to the borrower prior to acceleration following the borrower's breach.  **The notice MUST state "right to bring court action to assert the non-existence of a default or other defense of Borrower to acceleration and sale." (BS 12).**  Plaintiff

never received the notice and the notice recorded excludes **this critical and fundamental** information from the notice of default.

c. caused or advanced or facilitated the recording of the substitution of trustee on December 22, 2009 (1) identifying MERS as the beneficiary, (2) never identifying a lender, (3) and erroneously purporting to substitute RECONTRUST in lieu of Westwood Associates.  (BS 33-35).

d. caused or advanced or facilitated the recording of a notice of trustee sale on December 22, 2009 by RECONTRUST as a purported trustee, never identifying a lender, and falsely claiming exemptions and the timeframe for giving notice of sale did not apply.  (BS 36-39).

e.     caused or advanced or facilitated the recording of a notice of trustee sale on January 5, 2010 by RECONTRUST as a purported trustee, never identifying a lender, and falsely claiming exemptions and the timeframe for giving notice of sale did not apply.  (BS 40-43).

f.     caused or advanced or facilitated the recording of the corporate assignment of the deed of trust on October 8, 2008  to SECURITIZED TRUST when it was beyond the date of closing under the PSA.  (BS 44-46).

g.     caused or advanced or facilitated the recording of a trustee's deed upon sale on October 8, 2010 when no public auction had taken place and there did not exist authority to conduct a non-judicial foreclosure sale.  (BS 44-46).

h.     caused or advanced or facilitated transactions to facilitate false collection on FHA insured properties from the government based on inflated appraisals, discriminatory and targeted predatory lending against racial and language minorities, without and intent to ever negotiate a loan modification

because by continuing to advance the fraudulent practices defendants made more on a resale and completely undermined the purpose of the government to facilitate home ownership.

    i.    BANA in fact notified plaintiff that the debt allegedly due was more than double of what was recorded as the "public auction" sale price. Moreover, the alleged "public auction" sales price demonstrated that a loan modification was needed based on the predatory lending and inflated values caused by defendants' fraudulent practices.

61.    Defendants during the foreclosure process misrepresented material information and concealed material information causing a transfer of title.

62.    Defendants had knowledge of the falsity of their representation and that the information concealed was needed for plaintiff to protect his property interest.

63.    Plaintiff relied on the representations made by the defendants.

64.    As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount according to proof.

65.    Defendants' acts were willful and oppressive and justify an award of punitive damages according to proof.

66.    In addition plaintiff requests relief as prayed herein.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation
### (Against All Defendants, Except EDWARDS and FATC)

67.    Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully set forth herein.

68.     Defendants negligently caused a deed of trust to be transferred after the date of closing for the securitized trust and caused a false notice of trustee sale to be recorded.

69.     Defendants during the foreclosure process misrepresented material information and concealed material information causing a transfer of title.

70.     Defendants' representations were reckless and grossly negligent and violated standard and requirements required by law.

71.     As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount according to proof.

72.     Defendants' acts were willful and oppressive and justify an award of punitive damages according to proof.

73.     In addition plaintiff requests relief as prayed herein.

## THIRD CAUSE OF ACTION

### Quiet Title
### (FATC and EDWARDS)

74.     Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully  set forth herein.

75.     Plaintiff seeks an order quieting title to his separate property.  The legal description of the property is Lots 16 and 17, in Block 7, of Tract 1833, in the City of Long Beach, County of Los Angeles, State of California as per map recorded in Book 23, Page(s) 86 and 87, of Maps in the Office of the County Record of said County. Except all minerals, gas, oil, petroleum, naptha and other hydrocarbon substances in and under said land below a depth of 500 feet from the surface thereof without the right of surface entry.

21

76.     There did not exist legal authority to change lawful title through valid transactions.  Plaintiff is entitled to equitable relief by a judicial decree and order declaring plaintiff to be the title owner of record of the property on the effective date of said cancellation, quieting the legitimate title of plaintiff, and subject only to such legitimate liens and encumbrances, if any.

77.     Plaintiff requests that this court determine that the title to the property resides with the plaintiff against any and all adverse claims.

78.     Plaintiff requests that this court require defendants to pay all attorney's fees and costs and expenses associated with this complaint to quiet title to property.

## FOURTH CAUSE OF ACTION

### Wrongful Foreclosure  and Cancellation of Instruments
### (Against All Defendants, Except EDWARDS and FATC)

79.     Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully  set forth herein.

80.     Plaintiff attempted to work with defendants to obtain a modification of the loan.

81.     Plaintiff is informed and believes that CHL was forced out of the residential real estate market for its discriminatory practices and the same conduct was in effect as to WMC.  GE was aware of the discriminatory practices before it sold off WMC but never took corrective action as to plaintiff's loan even though it benefited from the discriminatory practices.  Plaintiff is informed and believes and thereon alleges that on the date of acceleration of default and notice of default that WMC did not function or operate pursuant to the terms of the deed of trust.

82.     A lender who invokes the power of sale must execute or cause the trustee to execute notice of the occurrence of events causing such action.  (Deed of Trust ¶ 22 BS 12).

Under the express terms of the deed of trust a lender is to give notice to the borrower prior to acceleration following the borrower's breach.  The notice MUST state and notify the borrower of the "right to bring court action to assert the non-existence of a default or other defense of Borrower to acceleration and sale."  The notice of default omits this information.  The default notice was not executed by a lawfully acting trustee.  (See BS 20 (Substitution of EXECUTIVE by GMAC), BS 30 (LANDSAFE signing for RECONTRUST).) No effort was made to assess the financial situation and explore options. (BS 31, 38, 42).

83.     Defendants failed to provide the SECURITIZED TRUST with an endorsement of the note prior to closing and the SECURITIZED TRUST never had standing to foreclose or to act as a grantee and beneficiary under the trustee deed upon sale.  (BS 48).  The SECURITIZED TRUST's claim to be a beneficiary is based on and invalid post-closing corporation assignment of deed of trust recorded before the sale on October 8, 2010.  (BS 44-46).  Defendants cannot prove that the SECURITIZED TRUST held plaintiff's loan and they cannot prove the SECURITIZED TRUST (which had a closing date of July 1, 2005) had an ownership interest in plaintiff's deed of trust.  The recorded documents show that plaintiff's loan was not assigned to the SECURITIZED TRUST until approximately five years after the closing date.  (BS 44-46).  The assignment was ineffective, precluding defendants, and each of them, from the conducting a trustee sale.  The trustee sale and deed upon sale is void ab initio.  (BS 47-52).  Additionally from the June 15, 2007 GMAC's recording of a substitution of trustee and the  June GE exodus from WMC to the October 8, 2010 trustee deed of sale  --- there is not a single recorded document identifying WMC as a lender beneficiary. (BS 19-52).  Plaintiff is informed and believes and thereon alleges there does not exist any authorization from WMC and that CHL, GE, and GMAC are not lender beneficiaries in the April 18, 2005 deed of trust.

84.     California Civil Code § 2932.5 provides.

Where a power to sell real property is given to a mortgagee, or other encumbrances, in an instrument intended to secure the payment of money, the power is part of the Security and vests in any person who by assignment becomes entitled to payment of the money secured by the instruments. The power of sale may be exercised by the assigned if the assignment us duly acknowledged and recorded.

85.     Plaintiff is informed and believes, and thereon alleges that § 2932.5 requires the recordation of an assignment of the beneficial interest in a deed of trust prior to foreclosure. Defendants, and each of them, cannot show valid and recorded assignments or substitution of trustees or proper procedures to commence a non-judicial sale of real property.

86.     The State of California has statutorily prescribed non-judicial foreclosure procedures, in Sections §2924 et. seq.

87.     Pursuant to statutory requirements, entities seeking to exercise a right of foreclosure pursuant to a deed of trust must strictly comply with the State's Statutory Prerequisites to foreclosure.

88.     The foreclosing entity must have actual assigned legal authority to file the Notice of Default, the power of sale, Cal. Civil Code §725 and. §726.   The statutory power of sale, .. .in virtually all California residential mortgages provides for foreclosure sales approve by the lender beneficiary and by the trustee named in a deed., or if there be a successor trustee duly recorded, as in Section §725 Cal. Civil Code.

89.     Deed of Trusts, rights to exercise a power of sale by the trustee and dictated by the owner of the note under the contract may be assigned, but a valid written assignment,

consistent with the statute of frauds, is a prerequisite to effectuate an assignment Section §2932.5 of the California Code.

90.   Defendants had a power of sale by the trustee and RECONTRUST is not a valid substituted trustee and no valid corporate assignment of deed of trust existed.

91.   With the absence, defective or unperfected assignment or substitution, an entity attempting to avail of any rights of a trustee, has no rights as a "trustee", and there is only one trustee to act at a time.

92.   A foreclosing trustee and beneficial owner owe the mortgagor a duty of good faith and reasonable diligence in the foreclosure process.   Failure to send a mandatory and legally correct statutorily required notice is inconsistent with the duty of good faith and reasonable diligence.

93.   Statute of frauds, Section §2932.5 Cal. Civil Code, dictates how an assignee, is required to possess such assignment in writing and record such.

94.   The defendants owed a duty of good faith and reasonable prudence while doing the diligence in the commencement and conduct of foreclosing proceedings.

95.   The assignment of a mortgage without a transfer of the indebtedness confers no right, since debt and security are inseparable and the mortgage alone is not a subject of transfer. "A trust deed has no assignable quality independent of the debt; it may not be assigned or transferred apart from the debt; and an attempt to assign the trust deed without a transfer of the debt is without effect."

96.   The promissory note is a negotiable instrument. transferring a deed of trust by itself does not allow enforcement of the instrument unless the promissory note is properly negotiated.   Here, defendants WMC and CHL never intended to provide mortgage loans in compliance with the law (to advance broad home ownership).   Instead their purpose

was to sell loans which were designed to trigger defaults so to perpetuate fraudulent government claims and a further re-sale of the same property (to commence and renew the same fraudulent scheme).

97.    None of the defendants are present holders of the instrument or are non holders in possession with rights of the holder. None of the defendants are entitled to enforce the instrument Sections 3309 & 3418 sub. (d) of the California Com. Code.

98.    Defendants knew that their actions were a false, done with the intent to deceive and induce reliance by plaintiff, and others whereby the fruits of these inducements would inure to the enrichment and benefits to the defendants herein.

99.    Plaintiff requests a cancellation of the instruments improperly recorded.

100.    Plaintiff had no indication that he should not rely on the fraudulent and deceitful misrepresentation and for that he has suffered the resulting damages of loss of personal savings, costs of the representation, credit damages, and opportunity costs resulting.

101.    As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount according to proof.

102.    Defendants' acts were willful and oppressive and justify an award of punitive damages according to proof.

103.    In addition plaintiff requests relief as prayed herein.

## FIFTH CAUSE OF ACTION

### Declaratory, Injunctive, and Equitable Relief
### (Against All Defendants)

104.    Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully  set forth herein.

105.    There exist a real and present controversy as to the respective rights and duties concerning the status and validity of the loan and transfer of title, the promissory note, deeds of trust, the action of nominees or agents or trustees, the actions of loan servicers and timing of substitution of loan servicers, the existence and status of lenders (after GE's divestment of WMC and termination of CHL by consent decree in the residential real estate market), and the foreclosure process.

106.    Plaintiff seeks a declaration that SECURITIZED TRUST is not a holder of in due court or a beneficiary of a promissory note executed by plaintiff at the time the trustee deed upon sale was recorded and that the trustee deed upon sale is void.  Plaintiff also seeks a declaration that the loan and  deed of trust are a product of discriminatory lending and predatory practices of defendants in the residential real estate market.

107.    Plaintiff requests both injunctive relief and appropriate equitable relief to restore his interest in the property.

108.    As a direct and proximate result of its conduct, plaintiff has or will incur attorney's fees, expert fees, and costs and seek an award in an amount according to proof. The request for fees includes but is not limited to fees under the Civil Rights Attorney Fees Awards Act of 1976 (42 U.S.C § 1988).

109.    Plaintiff seeks declaratory, injunctive, and equitable against these defendants.

110.    In addition plaintiff requests relief as prayed herein.

## SIXTH CAUSE OF ACTION

### Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq.
### (Against All Defendants, Except EDWARDS and FATC)

111.    Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully  set forth herein.

112.    All defendants are claimed creditors or persons or entities acting on behalf of claimed creditors.

113.     Defendants engaged in improper communication with plaintiff in violation of § 1692b and § 1692c including but not limited to continuing to communicate with the consumer.

114.    Defendants engaged in harassing, oppressive and abusive debt collection activities in violation of § 1692d

115.    Defendants engaged in false or misleading representations in violation of § 1692e, including but not limited to:

a.    the character, amount, and legal status of the alleged debt and the services rendered or compensation which may be received by any debt collection

b.    improper threats to take action that are not allowed by law or that were not intended to be taken

c.    false representations that concerning the transfer of interests and the claim that such transfer of interest would cause a loss of a claim or defense or subject to prohibited practices.

d.    failure to communicate that the debt collector is attempting to collect a debt and that the information would be used for that purpose

e.    false representations that the accounts have been turned over to innocent

purchasers for value.

f.      Use of any business name other than the true name of the debt collector's business.

g.      Using a false name in filings in the State of California.

h.       Making false assignments including but not limited to assignments after the closing of a securitized trust, and assignments which are after the alleged foreclosure sale.

116.    Defendants engaged in unfair practices in violation of § 1692f, including but not limited to:

a.      collection of amounts that are not authorized by the agreement creating the debt or permitted by law.

b.      causing charges to be made to any person for communications by concealment of the true purpose of the communications.

c.      Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property when (1) there is no present right to possession of the property claimed as collateral through an enforceable security interest, (2) there is no present intention to take possession of the property, (3) the property is not entitled to dispossession or disablement according to the law.

d.      Executing and recording false and misleading documents.

e.      Instituting improper or premature foreclosure proceedings to generate unwarranted fees or to continuing in collection of claims against the government.

f.      Executing and recording documents without legal authority.

g.      failing to disclose the principal for which documents were being executed and recorded in violation of Cal. Civil Code 1095.

h.      Acting as beneficiaries and trustees without the legal authority to do so.

i.     Failing to give proper notice of a trustee's sale and postponement of the sale pursuant to California Civil Code § 2994g and 2924h.

j.     Other deceptive business practices.

117.   Defendants used language and symbols other than the debt collectors address on an envelope when communicating by use of mail.

118.   Defendants failed to comply with the validation of debts as required by § 1692g.

119.   Defendants furnished and circulated deceptive forms in violation of § 1692j and as such all persons who participates in such conduct is liable to the same extent and same manner as the debt collector under § 1692k.

120.   Plaintiff is entitled to damages pursuant to § 1692k including reasonable attorney's fees and costs.

121.   As a direct and proximate result of its conduct, plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount according to proof.

122.   Defendants' acts were malicious and were willful and oppressive and justify an award of punitive damages.

123.   As a direct and proximate result of its conduct, plaintiff has or will incur attorney's fees, expert fees, and costs and seek an award in an amount according to proof. The request for fees includes but is not limited to fees under the Civil Rights Attorney Fees Awards Act of 1976 (42 U.S.C § 1988).

124.   Plaintiff seeks declaratory, injunctive, and equitable against these defendants.

125.   In addition plaintiff requests relief as prayed herein.

## SEVENTH CAUSE OF ACTION

**Violation Of The Fair Housing Act (42 U.S.C. §§ 3601-3619)**
**(Against All Defendants, Except EDWARDS and FATC)**

126.   Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully  set forth herein.

127.   It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States.  42 U.S.C. § 3601.

128.   Plaintiff is entitled to protection under the Fair Housing Act which covers discrimination in residential real estate related transactions. (See 24 CFR 100.110. Prohibited activities under 24 CFR Section 100.70 (d)(4)).

129.   Under the Fair Housing Act, it is unlawful "for any person or other entity whose business includes engaging in real estate-related transactions to discrimination against any person in making available such transaction, or in the terms or conditions of such a transaction because of race, color…sex…or national origin.  42 U.S.C. § 3605 (a).

130.   A residential real estate transaction is defined to include but is not limited to "purchasing of loans… secured by residential real estate."  Id. at § 3605 (b)(1).

131.   Federal regulations promulgated under the Fair Housing Act confirm that discriminatory policies and practices in connection with the purchase and securitization of mortgage loans are unlawful under 42 U.S.C. § 3605.  Code of Federal Regulations, Title 24 Housing and Urban Development, § 100.125 Discrimination in the purchasing of loans.

132.   In February 2013 the United States Department of Housing and Urban Development finalized important regulations relating to disparate impact discrimination. See 78 Fed. Reg 11460 (February 15, 2013).  Each defendant to which this cause of action relates are persons or entities whose business includes engaging in residential real estate-

related transactions under 42 U.S.C. § 3605. A covered person or entity violates 42 U.S.C. § 3605 when their policies or practices have an adverse disparate impact on persons of the protected class covered by the act.

133.    Defendants conduct, policies, and practices alleged herein had, and continue to have a disparate impact on persons of a protected class under the Act including racial and language minorities, immigrants, and women (race, color, sex, national origin). Moreover their pattern of conduct demonstrates intentional discrimination. The significant result of defendants conduct as described herein is that there is a disparate discriminatory impact of members of a protected class under the act.

134.    42 U.S.C. §3605, in part, states:

"Sec. 3605. Discrimination in residential real estate-related
    transactions

(a) In general

   It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

(b) 'Residential real estate-related transaction" defined

   As used in this section, the term ``residential real estate-related transaction" means any of the following:
    (1) The making or purchasing of loans or providing other
    financial assistance--
       (A) for purchasing, constructing, improving, repairing, or
       maintaining a dwelling; or
       (B) secured by residential real estate.

(2) The selling, brokering, or appraising of residential real property."

135.   42 U.S.C. §3617, states:

"Sec. 3617. Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

136.   Defendants conduct discriminates against plaintiff in violation of the Fair Housing Act and the handling of the foreclosure process was a form of prohibited intimidation and coercion particularly when plaintiff was eligible for lower cost loan and was in a discriminatory manner directed into a subprime loan (to further fraudulent claims against the government, and plaintiff in good faith attempted to negotiate a loan modification.

137.   Defendants conduct, policies, and practices alleged herein had, and continue to have a disparate impact on persons of a protected class under the Act including racial and language minorities, immigrants, and women (race, color, sex, national origin).  Moreover their pattern of conduct demonstrates intentional discrimination.  The significant result of defendants conduct as described herein is that there is a disparate discriminatory impact of members of a protected class under the act.

138.   As a direct and proximate result of its conduct, plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount according to proof.

139.   Defendants' acts were malicious and were willful and oppressive and justify an award of punitive damages.

140.   As a direct and proximate result of its conduct, plaintiff has or will incur attorney's fees, expert fees, and costs and seek an award in an amount according to proof. The request for fees includes but is not limited to fees under the Civil Rights Attorney Fees Awards Act of 1976 (42 U.S.C § 1988).

141.   Plaintiff seeks declaratory, injunctive, and equitable against these defendants.

142.   In addition plaintiff requests relief as prayed herein.

143.   As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount according to proof.

144.   Defendants' acts were willful and oppressive and justify an award of punitive damages according to proof.

145.   In addition plaintiff requests relief as prayed herein.

### EIGHTH CAUSE OF ACTION

**Violation of Cal. Govt. Code § 12955**
**(Cal. Fair Employment and Housing Act) (FEHA)**
**(Against All Defendants, Except EDWARDS and FATC)**

146.   Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully  set forth herein.

147.   Plaintiff is entitled to protection under the California Fair Employment and Housing Act including but not limited to California Government Code § 12955 and § 12955.7.

148.   Defendants intentionally discriminated against the Turners on the basis of their

race and/or sex.  Additionally, the policies, and discriminatory housing practices as to housing and/or real estate related services referred to herein have a disparate impact on members of a protected class.  See Sisemore v. Master Financial, 151 Cal.App.4th 136, 1423 (Cal. 2007).

149.  Under California Govt. Code § 12955 (e) it is unlawful:
"For any person…. or other financial institution that provides financial assistance for the purchase, organization… of any housing accommodation to discriminate against any person or group of persons because of the race, color, … sex… marital status,…source of income, or disability in the terms, conditions, or privileges relating to the obtaining or use of that financial assistance.

It is also unlawful:
(g) For any person to aid, abet, incite, compel, or coerce the doing of any of the acts or practices declared unlawful in this section, or to attempt to do so."

150.   Under California Gov. Code § 12955.1 it is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person having exercised or enjoyed, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by Section 12955 or 12955.1.

151.   The California Fair Employment and Housing Act must be substantially equivalent to the federal FHA.  See Cal. Govt. Code § 12955.6, Brown v. Smith (1997) 55 Cal.App.4th 767, 780. ("FEHA in the housing area is thus intended to conform to the general requirements of federal law in the area and may provide greater protection against discrimination.").

152.   The policies and practices of defendants have a disparate impact or

discriminatory effect or disproportionately adverse impact on African Americans and others protected under FEHA and California Civil Code § 51. C/TPDs engaged in intentional discriminatory conduct as to plaintiff, and irrespective of intent, their acts and omissions and pattern of conduct has the effect of discrimination on the basis of race or sex, or results in an actual or predictable discriminatory result.

153. Defendants engaged in unlawful conduct under FEHA and other standards by conduct specified above which are hereby incorporated by reference.

154. The acts complained of in this complaint are included in the broad scope of the FEHA.

155. As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer damages including economic and compensatory in an amount according to proof.

156. Defendants' acts were willful and oppressive and justify an award of punitive damages according to proof and all civil penalties allowed by against each defendant.

157. Plaintiff seeks injunctive and equitable relief to prevent defendants from engaging and continuing to engage unlawful practices.

158. Plaintiff seek attorneys' fees and costs for all litigation arising from the issues referred to in this complaint, litigation as to this complaint, and as consequential damages for the period covered during incidents at issue in this complaint. Plaintiff has been injured and will continue to suffer injuries and damages and request injunctive relief. Plaintiff has or will incur attorney's fees, expert fees, and costs and seek an award in an amount according to proof.

159. Plaintiff's claims for relief included all damages and remedies allowed under California Government Code § 12989.2.

160.    In addition plaintiff requests relief as prayed herein.

## NINTH CAUSE OF ACTION

### Violation of the Equal Credit Opportunity Act 15 U.S.C. § 1691
### (Against All Defendants, Except SECURTIZED TRUST, RECONTRUST,
### EXECUTIVE, EDWARDS and FATC)

161.    Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully  set forth herein.

162.    The residential lending and lending related policies and practices described herein violate ECOA 15 U.S.C. §§ 16691-1691f.

163.    The policies and practices of resistance to the full enjoyment of rights granted by ECOA  15 U.S.C. §§ 16691-1691f raise issue of general public importance and racial and language and minorities are subjected to higher direct economic costs, additional consequential economic damages from having an excessively costly loan including prepayment penalties, increased risk of credit problems, default, foreclosure, and other damages (including emotional distress).  The policies and practices described herein were intentional, willful, or implemented with reckless disregard for the rights of racial and language minority borrowers.

164.    Defendants conduct, policies, and practices alleged herein had, and continue to have a disparate impact on persons of a protected class under the ECOA including racial and language minorities, immigrants, and women (race, color, sex, national origin). Moreover their pattern of conduct demonstrates intentional discrimination.  The significant result of defendants conduct as described herein is that there is a disparate discriminatory impact of members of a protected class under the act.

165.    As a direct and proximate result of its conduct, plaintiff has suffered and will

continue to suffer damages including economic and compensatory, in an amount according to proof.

166. Defendants' acts were malicious and were willful and oppressive and justify an award of punitive damages.

167. As a direct and proximate result of its conduct, plaintiff has or will incur attorney's fees, expert fees, and costs and seek an award in an amount according to proof. The request for fees includes but is not limited to fees under the Civil Rights Attorney Fees Awards Act of 1976 (42 U.S.C § 1988).

168. Plaintiff seeks declaratory, injunctive, and equitable against these defendants.

169. In addition plaintiff requests relief as prayed herein.

170. As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount according to proof.

171. Defendants' acts were willful and oppressive and justify an award of punitive damages according to proof.

172. In addition plaintiff requests relief as prayed herein.

## TENTH CAUSE OF ACTION

**Violation of 42 U.S.C. § 1981, 1982, 1983, 1985, 1986, Thirteenth and Fourteenth Amendment**
**(Against All Defendants, Except EDWARDS and FATC)**

173. Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully  set forth herein.

### TITLE 42 U.S.C. § 1981, Civil Rights Act of 1866
### Thirteenth and Fourteenth Amendment

174.    All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

175.    Based on the falsely inflated appraisal and underwriting practices, discriminatory targeting of racial and language minorities in high costs loans, false transfer of loans into securitized trusts beyond the closing date, and refusal to provide information notice and to negotiate in good faith regarding loan modification on predatory loans; plaintiff does not have the full and equal right to make and enforce contracts and to the full and equal benefit of laws concerning racial equality.

### TITLE 42 U.S.C. § 1982, Civil Rights Act of 1866
### Thirteenth and Fourteenth Amendment

176.    All citizens of the United States have the same right as enjoyed by white citizens to inherit, purchase, lease, sell, hold, and convey real and personal property.

177.    Based on the falsely inflated appraisal and underwriting practices, discriminatory targeting of racial and language minorities in high costs loans, false transfer of loans into securitized trusts beyond the closing date, and refusal to provide information notice and to negotiate in good faith regarding loan modification on predatory loans; plaintiff does not have the same right enjoyed by white citizens to purchase and hold and convey real property.

## TITLE 42 U. S. C. § 1983, Civil Rights Act of  1871
## United States Constitution –Fourteenth Amendment
## (Equal Protection)

178.    Based on the falsely inflated appraisal and underwriting practices, discriminatory targeting of racial and language minorities in high costs loans, false transfer of loans into securitized trusts beyond the closing date, and refusal to provide information notice and to negotiate in good faith regarding loan modification on predatory loans , and material misrepresentations concerning the names and identity of entities operating of the banking entities taking action against the property; plaintiff is denied due equal protection and fair opportunity to protect his property interests.

## United States Constitution Fifth Amendment
## (Deprivation of Property Without Due Process of Law and Taking of Property without Just Compensation)

179.    Plaintiffs have been deprived their constitutional rights under the Fifth Amendment of the United States Constitution by conduct including but not limited to:

a.    By being deprived of notice required in the deed of trust to bring a court action.

b.    By being deprived of both liberty and property without due process of law so that institutions in residential real estate market can make and perpetuate or facilitate false claims against the government and thereby impair the policy of providing fair and affordable lending leading to home ownership.

## TITLE 42 U.S.C. § 1985

180.    Defendants obstructed justice by conspiring among each by conspiring to file false claims with the government and making loans with the intent or effect to cause high foreclosure rates in the communities of racial and language minorities.

## TITLE 42 U.S.C. § 1986

181.    Defendants knew and were in a position to know the acts specified above and had the power to prevent or aid in the prevention of such conduct, and some were instructed to take correct action by federal consent order, and have failed to take necessary corrective action.

182.    As a direct and proximate result of its conduct, plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount according to proof.

183.    As a direct and proximate result of its conduct, plaintiff has or will incur attorney's fees, expert fees, and costs and seek an award in an amount according to proof. The request for fees includes but is not limited to fees under the Civil Rights Attorney Fees Awards Act of 1976 (42 U.S.C § 1988).

184.    Defendants' acts were malicious and were willful and oppressive and justify an award of punitive damages according to proof particularly in light of the fact that they are charge with the obligation to protect the public.

185.    Plaintiff seeks declaratory and injunctive relief against these defendants.

186.    In addition plaintiffs request relief as prayed herein.

187.    As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount according to proof.

188.    Defendants' acts were willful and oppressive and justify an award of punitive damages according to proof.

189.    In addition plaintiff requests relief as prayed herein.

**ELEVENTH CAUSE OF ACTION**

**Violation of Business and Professions Code § 17200 et seq.**
**(Against All Defendants, Except EDWARDS and FATC)**

190.    Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully  set forth herein.

191.    Starting in 2010 extraordinary measures were taken in the State of California to stop foreclosure sales in California until lenders and others established they were complying with state law and this spread nationwide.

192.    The impetus of these necessary but drastic measures stemmed from evidence of document fraud on the part of the banks and their servicers and associates.

193.    During the securitization era, banks and the resulting trusts, in the rush to securitized mortgages and sell those to investors routinely ignored the critical step of obtaining mortgage assignments from the original lenders to the securities companies to the trusts.

194.    Now, years later, when the companies "servicing" the trusts "claim" a need to foreclose, there are no documents available to documents the proper chain of title because none were originally created. As a result, banks began to fraudulently create the missing documents or outsourcing the processing services. This practice was admitted by deposed bank executives such as GMAC's Jeffrey Stephen who admitted in sworn deposition testimony to signing more than 500 documents a day and up to 10, 000 documents a month related to foreclosures without reviewing them.

195.    Due to the strict timelines and guidelines to complete a foreclosure, banks were also fraudulently creating documents to effectuate foreclosure sales, false appraisals, and assignments to facilitate claims against the government.

196.   It is essential that banks and their trustees be held to properly transfer notes and deeds of trusts.

197.   Plaintiff is informed and believe, and therefore allege, that defendants, and each of them, engaged in unlawful, unfair or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of California Business and Professions Code § 17200.

198.   Defendants as part of their business practices, fraudulently and knowingly procured or offered false or fraudulently prepared documents to fabricate the missing gaps in the chain of title or to falsely demonstrate compliance with the PSA, state law and regulations related to non-judicial foreclosure and allowed these documents to be filed, registered, or recorded within this jurisdiction. The members of the public are likely to be deceived by this unlawful, oppressive and fraudulent business practices.

199.   The business practices of defendants were unlawful, deceptive, misleading and fraudulent and violate California law as alleged herein above. Further, the above specified Defendants, and each of them, knew that their business practices were unlawful, deceptive, misleading and fraudulent at the time they were so engaged.

200.   Pursuant to Sections 17200 et seq. of the California *Business and Professions Code,* unfair business practices include any unlawful, unfair, misleading or fraudulent business practice. The fraudulent and unlawful conduct of the above specified Defendants, and each of them, as alleged herein, constituted unlawful, unfair and/or fraudulent business practices within the provision of § § 17200 et seq of the California Business and Professions Code. Plaintiff seeks equitable relief by barring defendants from proceeding and/or continuing in their actions.  A constructive trust should be established in order to recover the losses to plaintiff wrongfully transferred. Also, defendants should be ordered

to provide an accounting of all monies paid by plaintiff and this court should order restitution to plaintiff.

201.    As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount according to proof.

202.    Defendants' acts were willful and oppressive and justify an award of punitive damages according to proof.

203.    In addition plaintiff requests relief as prayed herein.

## TWELFTH CAUSE OF ACTION

### Violation of Cal. Civil Code § 51, 52
### (Against All Defendants, Except EDWARDS and FATC)

204.    Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully  set forth herein.

205.    California Civil Code § 51 provides:

   " (b) All persons within the jurisdiction of this state are free and
   equal, and no matter what their sex, race, color, religion,
   ancestry, national origin, disability, medical condition, genetic
   information, marital status, or sexual orientation are entitled to
   the full and equal accommodations, advantages, facilities,
   privileges, or services in all business establishments of every kind
   whatsoever."

206.    Defendants, their employees, agencies, affiliates, contractors direct and indirectly aided and allow a condition to exist which denied plaintiff of the full and equal accommodations, advantages, facilities based on her national origin and sex.

207.    Defendants, their employees, agencies, affiliates, contractors direct and indirectly aided and allow a condition to exist in which plaintiff was demeaned and not

provided with notice of essential elements of the foreclosure process and refused to provide essential information concerning his application for loan modification and treated plaintiff differently than White homeowners in comparable circumstances.

208.    Defendants, their employees, agencies, affiliates, contractors direct and indirectly aided and allow a condition to exist which denies plaintiff full and equal accommodations, advantages, facilities of their business establishment.

209.    Plaintiff was harmed and defendants' conduct was a substantial factor in causing harm.

210.    As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount according to proof.  Plaintiff also seeks declaratory, injunctive, and equitable relief.

211.    Plaintiff also seeks statutory penalties under California Civil Code § 52 and reasonable attorneys' fees and costs.

212.    Defendants' acts were willful and oppressive and justify an award of punitive damages according to proof.

213.    In addition plaintiff request relief as prayed herein.

### THIRTEENTH CAUSE OF ACTION

**Violation of Cal. Civil Code § 52.1 & 52
((Against All Defendants, Except EDWARDS and FATC)**

214.    Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully  set forth herein.

215.    California Civil Code § 52.1 prohibits any person(s), whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or

individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of the State of California.

216.    Plaintiff has suffered intimidation and threats of violence to their persons or property by defendants, their employees, agencies, affiliates, contractors.

217.    As a direct and proximate result of defendants' conduct, failure plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount according to proof.  Plaintiff also seeks declaratory, injunctive, and equitable relief.

218.    Plaintiff also seeks statutory penalties under California Civil Code § 52 and reasonable attorneys' fees and costs.

219.    Defendants' acts were willful and oppressive and justify an award of punitive damages according to proof.

220.    In addition plaintiff requests relief as prayed herein.

## FOURTEENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress
### (Against All Defendants, Except EDWARDS and FATC)

221.    Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully  set forth herein.

222.    Defendants engaged in outrageous conduct.  Such conduct was continuous, extreme, intentional, and outrageous and said conduct was done for the purpose of causing plaintiff to suffer humiliation, mental anguish and emotional distress and was done with wanton and reckless disregard of the probability of causing such distress.

223.    As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount

according to proof.

224.   Defendants' acts were willful and oppressive and justify an award of punitive damages according to proof.

225.   In addition plaintiff requests relief as prayed herein.

## FIFTEENTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress
### (Against All Defendants, Except EDWARDS and FATC)

226.   Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully  set forth herein.

227.   Defendants engaged in conduct with caused plaintiff to suffer serious emotional distress.  The conduct of defendants was negligent and was a substantial factor in causing plaintiffs serious emotional distress.

228.   As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount according to proof.

229.   Defendants' acts were willful and oppressive and justify an award of punitive damages according to proof.

230.   In addition plaintiff requests relief as prayed herein.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial of all issues so triable.

WHEREFORE, plaintiff prays for judgment as follows:

1.      For actual, general, compensatory, special, and consequential damages in an amount according to proof at trial, but not less than $2,500,000 against all defendants;

47

2    For punitive damages in a sum sufficient to punish and set an example of defendants.

3.    For restitution of all money, property, profits and other benefits received by the defendants.

4.    For declaratory, injunctive , and equitable relief as described above and expressly to find that defendants do not have any legal cognizable rights as to plaintiff, the property and to rescind the foreclosure sale.

5.    For the Court to issue an order defendants to remove any instrument, including the assignment of deed of trust, which does or could be construed as constituting a cloud upon plaintiff's title to the property.

6.    For an order compelling defendants to disgorge all amounts wrongfully taken from plaintiff and returning the same to plaintiff with interest thereon at the statutory rate from the date funds were first received from plaintiff.

7.    For costs of suit incurred herein.

8.    For reasonable attorneys' fees incurred.

9.    For interest at the rate of ten percent (10%) per annum.

10.    For all statutory penalties allowed by law.

11.    For such order and further relief as the Court may deem proper.

Dated:  March 24, 2014

LAW OFFICE OF NINA RINGGOLD


By:___s/  Nina R. Ringgold, Esq.___
Nina Ringgold, Esq.
Attorney for the Plaintiff

48

## **VERIFICATION**

I, Qadeer Azam, am the plaintiff in the above entitled action.  I have read the foregoing First Amended Complaint and know of the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct and that this declaration was executed in Northridge, California.

Dated:  March 24, 2014

s/ Qadeer Azam

**EXHIBITS**

| Date Or Recording Date | Description | Bates Stamp Nos. |
|---|---|---|
| 4.18.05. | Deed Of Trust | 1-18 |
| 6.15.07 | Substitution Of Trustee | 19-21 |
| 7.19.07 | Grant Deed (Correction) | 22-24 |
| 2.5.09 | Notice Of Intent To Accelerate | 25-27 |
| 7.14.09 | Notice Of Default And Election To Sell | 28-32 |
| 12.22.09 | Substitution Of Trustee | 33-35 |
| 12.22.09 | Notice of Trustee's Sale | 36-39 |
| 1.5.10 | Notice Of Trustee's Sale | 40-43 |
| 10.8.10 | Corporate Assignment Of Deed Of Trust | 44-46 |
| 10.8.10 | Trustee Deed Upon Sale | 47-52 |




**This page is part of your document - DO NOT DISCARD**

**05 0887837**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**04/18/05 AT 08:00am**

## TITLE(S) :





L E A D        S H E E T

FEE 

D.T.T.



CODE
20

CODE
19

CODE
9

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.          **Number of AIN's Shown**




**THIS FORM IS NOT TO BE DUPLICATED**

0001

RECORDING REQUESTED BY __ 75
OLD REPUBLIC TITLE COMPANY

RECORDING REQUESTED BY /
RETURN TO:
WMC MORTGAGE CORP.

3100 THORNTON AVENUE

BURBANK, CA 91504

Attn: (WHOLESALE)

**05  0887837**

Prepared By:
GUITY SAYARI

WMC MORTGAGE CORP.

6320 CANOGA AVENUE 10TH FL
(MAILROOM)

WOODLAND HILLS, CA 91367

2717001846        [Space Above This Line For Recording Data]

|  | AZAM |
|---|---|
| SERV #: 11187255 | Loan #: 11187255 |
|  | MIN: 100136300111872551 |
|  | PIN: 7431-029-008 |

## DEED OF TRUST

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated       **April 8, 2005**             together with all Riders to this document.
(B) "Borrower" is  **QADEER AZAM, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY**

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  **WMC MORTGAGE CORP.**

Lender is a  **Corporation**                                organized and existing under the laws of
**CALIFORNIA**                     Lender's address is  **P.O. BOX 54089 LOS ANGELES,**
**CA 90054-0089**
(D) "Trustee" is  **WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION**
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888)679-MERS
(F) "Note" means the promissory note signed by Borrower and dated  **April 8, 2005**
The Note states that Borrower owes Lender
**Five Hundred Ninety Thousand Four Hundred And 00/100**
Dollars (U.S. $ **590,400.00**            ) plus interest Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  **May 1, 2035**

**CALIFORNIA** – Single Family – Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**      Form 3005 1/01
DOCUKCA1
DOCUKCA1.VTX 09/15/2004                    *(Page 1 of 13)*

0002

4/18/05

11187255                                                                              11187255

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                  ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☒ 1-4 Family Rider               ☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                          of    LOS ANGELES                                   :
LOT 16 AND 17 , BLOCK 7 OF TRACT NO. 1833, IN THE CITY OF LONG BEACH,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 23
PAGES 86 AND 87 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

05 0887837

0003

11187255                                          11187255

which currently has the address of   **1891 CASPIAN AVENUE # 1,2,3,4**
[Street]

**LONG BEACH**                      , California    90810          ("Property Address"):
[City]                              [State]      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note, (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.
If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                      Form 3005 1/01
DOCUKCA3
DOCUKCA3.VTX 09/15/2004                      *(Page 3 of 13)*

11187255                                    11187255

Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3005 1/01
DOCUKCA4
DOCUKCA4.VTX 09/15/2004                          (Page 4 of 13)

05 0887837

0005

4/18/05

11187255                                                11187255

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01
DOCUKCA5                                         *(Page 5 of 13)*
DOCUKCA5.VTX 09/15/2004

05 0887837

11187255                                                       11187255

Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                    Form 3005 1/01
DOCUKCA6
DOCUKCA6.VTX 09/15/2004                              *(Page 6 of 13)*

**05  0887837**

4718705

11187255                                                    11187255

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender. If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3005 1/01
DOCUKCA7                                                    *(Page 7 of 13)*
DOCUKCA7.VTX 09/15/2004

05 0887837

11187255                                                  11187255

Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01
DOCUKCA8
DOCUKCA8.VTX 09/15/2004                              *(Page 8 of 13)*

05 0887837

4/18/05

11187255                                                    11187255

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

**CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    **Form 3005 1/01**
DOCUKCA9
DOCUKCA9.VTX 09/15/2004                    *(Page 9 of 13)*

**05  0887837**

**0010**

4/18/05

11187255                                              11187255

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21· (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances· gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law,

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                          Form 3005 1/01
DOCUKCA10                                    *(Page 10 of 13)*
DOCUKCAA.VTX 09/15/2004

**05  0887837**

11187255                                             11187255

(b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01
DOCUKCA11
DOCUKCAB.VTX 09/15/2004                               *(Page 11 of 13)*

11187255                                                11187255

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

4/11/05

- Borrower - QADEER AZAM - Date -

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                 Form 3005 1/01
DOCUKCA12
DOCUKCAC.VTX 09/15/2004                              *(Page 12 of 13)*

05 0887837

11187255                                                              11187255

[Space Below This Line for Acknowledgment]

State of _California_

County of _Ventura_

On _April 11, 2005_ , before me, _Judi Spilger_

personally appeared _Qadeer Ajam_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s), whose name(s)                subscribed to the within instrument and acknowledged to me that executed the same in                authorized capacity(ies), and that by                signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public

My Commission Expires

```
JUDI SPILGER
Commission # 1432904
Notary Public - California
Ventura County
My Comm. Expires Aug 26, 2007
```

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01
DOCUKCA13
DOCUKCAD.VTX 09/15/2004                    *(Page 13 of 13)*

05 0887837

15

# 1-4 FAMILY RIDER
## (Assignment of Rents)

AZAM

Servicing #: 11187255                                                 Loan No.: 11187255

THIS 1-4 FAMILY RIDER is made this **8th** day of **April, 2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **WMC MORTGAGE CORP.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**1891 CASPIAN AVENUE # 1,2,3,4 LONG BEACH, CA 90810**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3170 1/01
DOCUR4A1                                                        *(page 1 of 3 pages)*

WMCDR4A1.VTX   02/17/2003

**05 0887837**

11187255                                        11187255

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3170 1/01
DOCUR4A2                                         *(page 2 of 3 pages)*

WMCDR4A2.VTX  02/17/2003

05  0887837

11187255                                         11187255

a default occurs  Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

    **I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

                                     9/11/05

  - Borrower - QADEER AZAM - Date -

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3170 1/01
DOCUR4A3                            *(page 3 of 3 pages)*

WMCDR4A3.VTX  03/17/2003

05 0887837



This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

DEC 0 5 2013

Dean C. Logan  REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

0018



**This page is part of your document - DO NOT DISCARD**





**20071453659**   Pages: 002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

06/15/07 AT 10:44AM

| | |
|---|---|
| Fee: | 9.00 |
| Tax: | 0.00 |
| Other: | 0.00 |
| Total: | 9.00 |

790846      200706150150007   Mail

**TITLE(S) :** _____



L E A D     S H E E T

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.      **Number of AIN's Shown**

   E 888537      **THIS FORM IS NOT TO BE DUPLICATED**   

0019

Recording Requested By:
GMAC MORTGAGE, LLC

When Recorded Return To:
Current Trustor:
QADEER AZAM
9420 RESEDA BLVD. #611
NORTHRIDGE, CA  91324

06/15/07



**20071453659**

---

## SUBSTITUTION OF TRUSTEE

GMAC MORTGAGE, LLC - CONSUMER #:8307046682 "AZAM"  Lender ID:41810/88934161  Los Angeles, California PIF:
05/24/2007
**MERS #: 100013800889341612  VRU #: 1-888-679-6377**

**Prepared By:**  Gina Herman, GMAC MORTGAGE, LLC 3451 HAMMOND AVENUE, PO BOX 780, WATERLOO, IA 50704-0780
1-800-205-4622

WHEREAS, the undersigned is the present Beneficiary under the Deed of Trust described below as follows:
Original Trustor : QADEER AZAM Original Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. ("MERS") Dated: 02/16/2006 Recorded: 02/17/2006  as Instrument No.: 06-0367533 in the County of Los
Angeles and State of  California.

AND WHEREAS , the undersigned desires to substitute a different Trustee for the purpose of reconveying said Deed
of TRUST; NOW THEREFORE the undersigned hereby substitutes EXECUTIVE TRUSTEE SERVICES, LLC as
Trustee under said Deed of Trust.

On June 4th, 2007
Mortgage Electronic Registration Systems, Inc. ("MERS")

Vickie Ingamells, Assistant Secretary

STATE OF Iowa
COUNTY OF Black Hawk

On June 4th, 2007, before me, A. SEEDORFF, a Notary Public in and for Black Hawk in the State of Iowa,
personally appeared Vickie Ingamells, Assistant Secretary, personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

A. SEEDORFF
Notary Expires: 12/14/2009  #744401

```
A. SEEDORFF
NOTARIAL SEAL · STATE OF IOWA
COMMISSION NUMBER 744401
MY COMMISSION EXPIRES DECEMBER 14, 2009
```
(This area for notarial seal)

"GCH"GCHGMAC"06/04/2007 08 08 00 PM" GMAC22GMAC0000000000000001838251" CALOS A" 8307046682 CASTATE_TRUST_SUB "GCH"GCHGMAC"



This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

DEC 0 5 2013

Dean C. Logan   REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

▲ **This page is part of your document - DO NOT DISCARD** ▲

**20071707060**   Pages: 002

Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California

**07/19/07 AT 08:00AM**

Fee: 11.00
Tax: 0.00
Other: 0.00
Total: 11.00

Title Company :

**TITLE(S) :   DEED**

▲ ▲

L E A D   S H E E T

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.        **Number of AIN's Shown**

▲   E244210   **THIS FORM IS NOT TO BE DUPLICATED**   ▲

0022

# FIDELITY-VAN NUYS

RECORDING REQUESTED BY:
Gold Value Escrow, Inc.

AND WHEN RECORDED MAIL TO:
AND MAIL TAX STATEMENT TO:

**Qadeer Azam**
9420 Reseda Blvd. #3
Northridge, CA  91324

Order No. 1010556
Escrow No. 07-07222-RC
Parcel No. 7431-029-008

07/19/07

**20071707060**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS $ and CITY $
_____ computed on full value of property conveyed, or
_____ computed on full value less liens or encumbrances remaining at the time of sale.
_____ unincorporated area: _____ Long Beach, and
**"This Deed is being recorded to correct the last name spelling of Grantee, R & T 11911"**
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Qadeer Azam, a married man who acquired title as Oadeer Azam, a married man**

hereby GRANTS to **Qadeer Azam, a Married Man as his sole and separate property**

the following described real property in the County of **Los Angeles**, State of California:

Lot 16 and 17, in Block 7, of Tract No. 1833, in the City of Long Beach, County of Los Angeles, State of California, as per map recorded in Book 23 Pages 86 and 87 of maps, in the office of the County Recorder of said county.

Property commonly known as: 1891 Caspian Avenue, Long Beach, CA 90810

**"This Deed is being recorded to correct the first name spelling of Grantee, R & T 11911"**

Date   June 19, 2007

Borrower's Signature

Qadeer Azam

**ACCOMODATION**
This Document delivered to Recorder
as an accomodation only at the
express request of the parties hereto.
It has not been examined as to
its effect of validity.

STATE OF CALIFORNIA      }
                         } S.S.
COUNTY OF ORANGE         }

On 4 JULY 2007 , before me, AMIR KHAN Notary Public, personally appeared **Qadeer Azam** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

AMIR KHAN
Commission # 1730819
Notary Public - California
Los Angeles County
My Comm. Expires Mar 12, 2011

0023



This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

DEC 0 5 2013

Dean C. Logan    REGISTRAR-RECORDER/COUNTY CLERK
                 LOS ANGELES COUNTY, CALIFORNIA

0024

 **Countrywide®**
HOME LOANS
PO Box 9048
Temecula, CA 92589-9048



PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

*Send Payments To:*
PO Box 10219
Van Nuys, CA  91410-0219

*Send Correspondence to:*
PO Box 5170, MS SV314B
Simi Valley, CA 93065

Qadeer Azam
9420 Reseda Blvd
Northridge, CA 91324-2932

20000205-7
BLQNSENV





1128-v9

0025



**HOME LOANS**

P.O. Box 8239
Van Nuys, CA 91409-8239

*Business Address:*
450 American Street
Simi Valley, CA 93065-6285

*Send Payments to:*
P.O. Box 10219
Van Nuys, CA 91410-0219

February 5, 2009

Sent Certified Mail:
7113 8257 1473 0764 2145
Return Receipt Requested

Qadeer Azam
9420 Reseda Blvd
Northridge, CA 91324-2932

Account No.:____5495
Property Address:
1891 Caspian Ave
Long Beach, CA 90810-4205

## NOTICE OF INTENT TO ACCELERATE

Dear Qadeer Azam:

Countrywide Home Loans Servicing LP (hereinafter "Countrywide") services the home loan described above on behalf of the holder of the promissory note (the "Noteholder"). The loan is in serious default because the required payments have not been made. The total amount now required to reinstate the loan as of the date of this letter is as follows:

| | | |
|---|---|---:|
| Monthly Charges: | 12/01/2008 | $11,341.20 |
| Late Charges: | 12/01/2008 | $378.04 |
| Other Charges: | Total Late Charges: | $0.00 |
| | Uncollected Costs: | $15.00 |
| | Partial Payment Balance: | ($0.00) |
| | **TOTAL DUE:** | **$11,734.24** |

You have the right to cure the default. To cure the default, on or before March 7, 2009, Countrywide must receive the amount of $11,734.24 plus any additional regular monthly payment or payments, late charges, fees and charges, which become due on or before March 7, 2009.

The default will <u>not</u> be considered cured unless Countrywide receives "good funds" in the amount $11,734.24 on or before March 7, 2009. If any check (or other payment) is returned to us for insufficient funds or for any other reason, "good funds" will not have been received and the default will not have been cured. No extension of time to cure will be granted due to a returned payment. Countrywide reserves the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise. For example, if less than the full amount that is due is sent to us, we can keep the payment and apply it to the debt but still proceed to foreclosure since the default would not have been cured.

If the default is not cured on or before March 7, 2009, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property. If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, Countrywide and the Noteholder shall be entitled to collect all fees and costs incurred by Countrywide and the Noteholder in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

Your loan is in default. Pursuant to your loan documents, Countrywide may, enter upon and conduct an inspection of your property. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. **The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument and as permitted by law.**

If you are unable to cure the default on or before March 7, 2009, Countrywide wants you to be aware of various options that may be available to you through Countrywide to prevent a foreclosure sale of your property. For example:

- Repayment Plan: It is possible that you may be eligible for some form of payment assistance through Countrywide. Our basic plan requires that Countrywide receive, up front, at least ½ of the amount necessary to bring the account

The communication is from a debt collector.
Please write your account number on all checks and correspondence.
We may charge you a fee for any payment returned or rejected by your financial institution, subject to applicable law.

BLQNSENV 8795 12/11/2008

Account Number ____495-3

- Make your check payable to Countrywide Home Loans
- Write your account number on your check or money order
- Write in any additional amounts you are including (if total is more than $5000, please send certified check)
- Don't attach your check to the payment coupon
- Don't include correspondence
- Don't send cash

Qadeer Azam
1891 Caspian Ave

Balance Due for charges listed above: $11,734.24 as of February 5, 2009.

Please update e-mail information on the reverse side of this coupon.

| Additional Principal |
| Additional Escrow |
| Other |
| Check Total |

BLQNSENV

**Countrywide**
PO BOX 10219
Van Nuys, CA 91410-0219

IIdaaalIIdaalIIIaIIaaaIdaIIIdaaaIIIdaaIIdIad

3424



0026

current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans also are available.

- Loan Modification: Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types.

- Sale of Your Property: Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through Countrywide even if your home is worth less than what is owed on it.

- Deed-in-Lieu: Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with Countrywide, you must contact us immediately. If you request assistance, Countrywide will need to evaluate whether that assistance will be extended to you. In the meantime, Countrywide will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by March 7, 2009 as outlined above will result in the acceleration of your debt.

Additionally, the U.S. Department of Housing and Urban Development (HUD) funds free or very low cost housing counseling across the nation. Housing counselors can help you understand the law and your options. They can also help you to organize your finances and represent you in negotiations with your lender if you need this assistance. You may find a HUD-approved housing counselor near you by calling 1-800-569-4287. For the hearing impaired, HUD Counseling Agency (TDD) numbers are available at 1-800-877-8339.

Time is of the essence. Should you have any questions concerning this notice, please contact Loan Counseling Center immediately at 1-800-669-0102. Our office hours are between 8:15 AM and 5:15 PM (Pacific Time).

Sincerely,

Loan Counseling Center

E-mail use: Providing your e-mail address below will allow us to send you information on your account.
Account Number _____ 5495
Qadeer Azam E-mail address

How we post your payments: All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an additional amount applied to future payments, rather than principal reduction.

Postdated checks: Countrywide's policy is not to accept postdated checks, unless specifically agreed to by a loan counselor or technician.

0027



**This page is part of your document - DO NOT DISCARD**

# 20091057372



**Pages: 0004**



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**07/14/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



200907140220012

00000860619



002204426

**SEQ:
06**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

**LANDSAFE TITLE**

2

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063


07/14/2009
*20091057372*

Attn: Richetta (Monique) Jones
TS No.  09-0099629
Title Order No. 09-8-282041

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is  $31,225.26, as of 07/13/2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

[Page 1 of 2 ]

*Form nod (09/01)*


0029

3

TS No. 09-0099629

    To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
**C/O BAC Home Loans Servicing, LP**
**400 COUNTRYWIDE WAY SV-35**
**SIMI VALLEY, CA  93065**
**FORECLOSURE DEPARTMENT (800) 669-6650**

    If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

    Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.  Remember,

**YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 04/08/2005, executed by QADEER AZAM, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 04/18/2005, as Instrument No. 05 0887837 (or Book , Page ) of Official Records in the Office of the County Recorder of Los Angeles County, California.
Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 590,400.00.
That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of :  FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON  12/01/2008  AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, TOGETHER WITH ALL LATE CHARGES; PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS' FEES.  IN ADDITION,  THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON 05/01/2035 AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.
That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured  thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable  and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.
If required by the provisions of  Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.
Dated: July 13, 2009
RECONTRUST COMPANY, N.A., as agent for the Beneficiary
By LandSafe Title Corporation, as its Attorney in Fact
By _____

    **GABRIELA IBARRA**

[Page 2 of 2 ]

*Form nod (09/01)*



**Bank of America**

Home Loans

Notice Date: July 3, 2009
Account No.: 09-0099629

Property Address:
1891 Caspian Ave
Long Beach, CA  90810

Qadeer Azam
9420 Reseda Blvd
Northridge, CA  91324

## CALIFORNIA DECLARATION

I, TITUS OKUMALI, of BAC Home Loans Servicing, LP, declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

☒ BAC Home Loans Servicing, LP has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure,

☐ BAC Home Loans Servicing, LP tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5, or

☐ BAC Home Loans Servicing, LP verified that the borrower has surrendered the property.

☐ BAC Home Loans Servicing, LP has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

☐ BAC Home Loans Servicing, LP has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

☐ The  provisions  of  California  Civil  Code  §2923.5  do  not  apply  because

7/7/2009   PTW - TX
Date and Place

COLLECTOR 11
Name of Signor                              Title and/or Position

This communication is from BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A.
CALDECLH 6652/9624 8/29/2008

0031



This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

DEC 0 5 2013

Dean C. Logan  REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

0032



**This page is part of your document - DO NOT DISCARD**



# 20091949486



Pages:
0002

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**12/22/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 12.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 12.00 |



**L E A D S H E E T**



200912220190013

00001682981



002456458

**SEQ:
01**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**



T46

0033

**LANDSAFE TITLE**

RECORDING REQUESTED BY:
RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:**
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063



12/22/2009

*20091949486*

ATTN: Nallely Ochoa
TS No. 09-0099629

09-8-282041

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, QADEER AZAM, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY was the original Trustor, WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust dated 04/08/2005 recorded on 04/18/2005 as Instrument No. 05 0887837 in Book  Page  of Official Records of  Los Angeles County, California;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes  RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS: 1800 Tapo Canyon Rd., CA6-914-01-94 SIMI VALLEY,  CA  93063, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED:December 18, 2009        MORTGAGE ELECTRONIC REGISTRATION
                               SYSTEMS, INC.

)

State of:   **CALIFORNIA**              BY: _____
County of:  **VENTURA**        )       Gary Nord, Assistant Secretary

On **DEC 1 8 2009** before me, _____**JANET L. KOCH**_____, notary public, personally appeared Gary Nord, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
           **JANET L. KOCH**

JANET L. KOCH
Commission # 1776832
Notary Public -- California
Ventura County
My Comm. Expires Oct 29, 2011

Form sub (01/09)
**0034**

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

DEC 0 5 2013

*Dean C. Logan* REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA



**This page is part of your document - DO NOT DISCARD**



## 20091949487



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/22/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 15.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 15.00 |



**L E A D S H E E T**



200912220190013

00001682982



002456458

**SEQ:**
**02**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

E531053

T46

0036

**LANDSAFE TITLE**

RECORDING REQUESTED BY:
RECONTRUST COMPANY
12400 Olive, Ste 555
Bldg D RGV-D7-450
Creve Coeur, MO 63141
WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
12400 Olive, Ste 555
Bldg D RGV-D7-450
TS No. 09-0099629
Title Order No. 09-8-282041



12/22/2009

*20091949487*

APN No. 7431-029-008

## NOTICE OF TRUSTEE'S SALE

## YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 04/08/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by QADEER AZAM, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY, dated 04/08/2005 and recorded 04/18/2005, as Instrument No. 05 0887837, in Book , Page of Official Records in the office of the County Recorder of LOS ANGELES County, State of California, will sell on 01/07/2010 at 01:00 PM, At the front entrance to the Pomona Superior Courts Building, 350 West Mission Blvd., Pomona

at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be: 1891 CASPIAN AVENUE # 1,2,3,4, LONG BEACH, CA 90810. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $619,424.06. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.
If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.

RECONTRUST COMPANY
12400 Olive, Ste 555
Bldg D RGV-D7-450
Creve Coeur, MO 63141
Phone/Sale Information: (314) 991-0255

By:

Joselyn Casillas,  Team Member

Kozeny & McCubbin, L.C. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

0037

*Form nos (07/01)*

3

09-99629

Qadeer Azam
9420 Reseda Blvd  611
Northridge, CA  91324

**Property Address:**
1891 Caspian Ave
Long Beach, CA 90810

## CALIFORNIA DECLARATION

I, Evan Johnston , of BAC Home Loans Servicing, LP, declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

BAC Home Loans Servicing, LP, has obtained from the Commissioner of Corporations a final order of exemption pursuant to California Civil Code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

AND

The timeframe for giving Notice of Sale specified in subdivision (a) of Civil Code Section 2923.52 does not apply pursuant to Section 2923.52 (b).

10/21/09   Simi Valley, CA
Date and Place

Evan Johnston                                    Team Manager
Name of Signor                                   Title and/or Position


Signature

This communication is from BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A.

CA Dec AB No 7  1121  07/29/2009

0038



This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

DEC 0 5 2013

*Dean C. Logan*  REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

 This page is part of your document - DO NOT DISCARD



## 20100006974





**Pages: 0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/05/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 15.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 15.00 |



LEADSHEET



201001050130007

00001736661



002473292

SEQ:
19

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

T46

LANDSAFE TITLE

RECORDING REQUESTED BY:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
TS No. 09-0099629
Title Order No. 09-8-282041



01/05/2010

*20100006974*

APN No.  7431-029-008

# NOTICE OF TRUSTEE'S SALE

## YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 04/08/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by QADEER AZAM, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY, dated 04/08/2005 and recorded 04/18/2005, as Instrument No. 05 0887837, in Book , Page  of Official Records in the office of the County Recorder of LOS ANGELES County, State of California, will sell on 01/22/2010 at 01:00 PM, At the front entrance to the Pomona Superior Courts Building, 350 West Mission Blvd., Pomona

at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust.  The street address and other common designation, if any, of the real property described above is purported to be:  1891 CASPIAN AVENUE # 1,2,3,4, LONG BEACH, CA  90810.  The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $622,493.83.  It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.
If required by the provisions of  Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.

RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Phone/Sale Information (800) 281-8219

By:
Joselyn Casillas,  Team Member

RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt.  Any information obtained will be used for that purpose.

Form nos (07/01)

0041

09. 99629                    3

Qadeer Azam                          **Property Address:**
9420 Reseda Blvd  611                1891 Caspian Ave
Northridge, CA  91324                Long Beach, CA 90810

# CALIFORNIA DECLARATION

I, <u>Evan Johnston</u> , of BAC Home Loans Servicing, LP, declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

BAC Home Loans Servicing, LP, has obtained from the Commissioner of Corporations a final order of exemption pursuant to California Civil Code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

AND

The timeframe for giving Notice of Sale specified in subdivision (a) of Civil Code Section 2923.52 <u>does not</u> apply pursuant to Section 2923.52 (b).

10/21/09   Siml Valley, CA
Date and Place

Evan Johnston                        Team Manager
Name of Signor                       Title and/or Position

Signature

This communication is from BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A.

CA Dec AB No 7  1121-0 07/29/2009

0042



This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

DEC 0 5 2013

REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

0043



▲     This page is part of your document - DO NOT DISCARD     ▲



## 20101439149



**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/08/10 AT 08:00AM**

| FEES : | 18.00 |
|---|---|
| TAXES : | 0.00 |
| OTHER : | 0.00 |
| PAID : | 18.00 |

▲



**L E A D S H E E T**



201010080220003

00003094022



002929067

**SEQ:**
**17**

DAR - Title Company (Hard Copy)



▲     **THIS FORM IS NOT TO BE DUPLICATED**     t46     ▲

LandSafe Default

RECORDING REQUESTED BY:
RECONTRUST COMPANY
**AND WHEN RECORDED MAIL DOCUMENT**
**AND TAX STATEMENTS TO:**
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA  93063



10/08/2010
*20101439149*

TS No. 09-0099629

09-8-282041

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/~~MORTGAGE~~

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**WELLS FARGO BANK, NATIONAL ASSOCIATION ON BEHALF OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2005-WMC6 MORTGAGE PASS-THROUGH CERTIFICATES,SERIES 2005-WMC6 MORTGAGE PASS-THROUGH CERTIFICATES,SERIES 2005-WMC6**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 04/08/2005, EXECUTED BY: QADEER AZAM, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY,TRUSTOR: TO WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION, TRUSTEE AND RECORDED AS INSTRUMENT NO. 05 0887837 ON 04/18/2005, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF LOS ANGELES  COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED: ~~July 13, 2009~~              **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

9/29/10 MA.

State of:     **California**          )     BY: _____
County of:    **Ventura**            )          **GARY NORD**              , Assistant Secretary
On   **OCT 0 5 2010**
     before me,     **R.J GREEAR**          , notary public, personally appeared
     **GARY NORD**                         , who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____   (Seal)
            **R.J GREEAR**

R. J. GREEAR
Commission # 1784051
Notary Public - California
Ventura County
My Comm. Expires Dec 8, 2011

<em>Form asgnmnt (01/09)</em>

17C

0045

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

DEC 0 5 2013

Dean C. Logan  REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

0046



**This page is part of your document - DO NOT DISCARD**



# 20101439150



**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/08/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201010080220003

00003094023



002929067

**SEQ:**
**18**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E246420

t46

RECORDING REQUESTED BY:   LandSafe Default
RECONTRUST COMPANY
AND WHEN RECORDED MAIL TO:

RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA  93063

Forward Tax Statements to Address listed above



*20101439150*

10/08/2010

_____
SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No. 09-0099629
Title Order No. 09-8-282041

## TRUSTEE'S DEED UPON SALE

APN#     7431-029-008

TRANSFER TAX: $_____

The Grantee herein  was the beneficiary
The amount of the unpaid debt was $ 653,630.76
The amount paid by the Grantee was $ 339,750.00
The property is in the city of LONG BEACH, County of LOS ANGELES

Signature of Declarant or Agent determining tax. Firm Name
SoCal _____

RECONTRUST COMPANY, N.A., as the duly appointed Trustee (or successor Trustee or substituted Trustee), under a Deed of Trust referred to below, and herein called "Trustee", does hereby grant without covenant or warranty to:

WELLS FARGO BANK, NATIONAL ASSOCIATION ON BEHALF OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2005-WMC6 MORTGAGE PASS-THROUGH CERTIFICATES,SERIES 2005-WMC6     MORTGAGE PASS-THROUGH CERTIFICATES,SERIES 2005-WMC6

herein called Grantee, the following described real property situated in LOS ANGELES County, California:

SEE ATTACHED LEGAL DESCRIPTION      **SEE EXHIBIT A**

This conveyance is made pursuant to the powers conferred upon Trustee by the Deed of Trust executed by QADEER AZAM, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY, as Trustor, recorded on 04/18/2005, Instrument Number 05 0887837 ( or Book , Page ) Official Records in the Office of the County Recorder of LOS ANGELES County.

All requirements of law regarding the recording and mailing of copies of the Notice of Default and Election to Sell, and the recording, mailing, posting, and publication of the Notice of Trustee's Sale have been complied with.

*Form trsteedeed (01/09)*

18C

LandSafe Default

TS No. 09-0099629

Title Order No. 09-8-282041

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its power under said Deed of Trust sold said real property at public auction on 09/29/2010. Grantee, being highest bidder at said sale became the purchaser of said property for the amount bid, which amount was $ 339,750.00.

DATE:       September 29, 2010                        **RECONTRUST COMPANY, N.A.**

                                        BY: _____
                                             **GARY NORD**        , Team Member
                                             **Assistant Secretary**

State of California            }

County of Ventura              }

On ___OCT 0 5 2010___ before me, ___R.J GREEAR___, notary public, personally appeared ___GARY NORD___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)
                 **R.J GREEAR**

R. J. GREEAR
Commission # 1784051
Notary Public - California
Ventura County
My Comm. Expires Dec 8, 2011

*Form trsteedeed (01/09)*

LandSafe Default

EXHIBIT "A"

THE LAND REFERRED TO IN THIS GUARANTEE IS SITUATED IN THE **STATE OF CALIFORNIA, CITY OF LONG BEACH, COUNTY OF LOS ANGELES** AND IS DESCRIBED AS FOLLOWS:

LOT 16 AND 17 , BLOCK 7 OF TRACT NO. 1833, IN THE CITY OF LONG BEACH, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 23 PAGES 86 AND 87 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

0050

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

DEC 0 5 2013

Dean C. Logan    REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

REGISTRAR-RECORDER/COUNTY CLERK
COUNTY OF LOS ANGELES · CALIFORNIA

0051



Los Angeles County **REGISTRAR-RECORDER/COUNTY CLERK**

DEAN C. LOGAN
Registrar-Recorder/County Clerk

If this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

RER 2011

P.O. Box 1130, Norwalk,  California  90651-0489 - www.lavote.net

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself [✓] ) | **DEFENDANTS** ( Check box if you are representing yourself [ ] ) |
|---|---|
| Qadeer Azam | WELLS FARGO BANK, NATIONAL ASSOCIATION, As Trustee For The Holders Of Morgan Stanley ABS Capital I Inc., Trustee 2005-WMC6, Mortgage Pass-Through Certificates, Series 2005-WMC6, COUNTRYWIDE BANK, [See Attached] |
| **(b) County of Residence of First Listed Plaintiff**   Orange <br> *(EXCEPT IN U.S. PLAINTIFF CASES)* | **County of Residence of First Listed Defendant**   Columbia <br> *(IN U.S. PLAINTIFF CASES ONLY)* |
| **(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. <br><br> Nina Ringgold, Esq. Law Offices of Nina R. Ringgold, 9420 Reseda Blvd. #361, Northridge, CA  91324 | **Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. <br><br> unknown |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- [ ] 1. U.S. Government Plaintiff
- [✗] 3. Federal Question (U.S. Government Not a Party)
- [ ] 2. U.S. Government Defendant
- [ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [✗] 1 | [ ] 1 | Incorporated or Principal Place of Business in this State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [✗] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. ORIGIN** (Place an X in one box only.)

- [✗] 1. Original Proceeding
- [ ] 2. Removed from State Court
- [ ] 3. Remanded from Appellate Court
- [ ] 4. Reinstated or Reopened
- [ ] 5. Transferred from Another District (Specify)
- [ ] 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** [✗] Yes [ ] No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** [ ] Yes [✗] No   [✗] **MONEY DEMANDED IN COMPLAINT:** $ 5,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)

See Attached

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| [ ] 375 False Claims Act | [ ] 110 Insurance | [ ] 240 Torts to Land | [ ] 462 Naturalization Application | **Habeas Corpus:** | [ ] 820 Copyrights |
| [ ] 400 State Reapportionment | [ ] 120 Marine | [ ] 245 Tort Product Liability | [ ] 465 Other Immigration Actions | [ ] 463 Alien Detainee | [ ] 830 Patent |
| [ ] 410 Antitrust | [ ] 130 Miller Act | [ ] 290 All Other Real Property | | [ ] 510 Motions to Vacate Sentence | [ ] 840 Trademark |
| [ ] 430 Banks and Banking | [ ] 140 Negotiable Instrument | **TORTS** | **TORTS PERSONAL PROPERTY** | [ ] 530 General | **SOCIAL SECURITY** |
| [ ] 450 Commerce/ICC Rates/Etc. | [ ] 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | [ ] 370 Other Fraud | [ ] 535 Death Penalty | [ ] 861 HIA (1395ff) |
| [ ] 460 Deportation | | [ ] 310 Airplane | [ ] 371 Truth in Lending | **Other:** | [ ] 862 Black Lung (923) |
| [ ] 470 Racketeer Influenced & Corrupt Org. | [ ] 151 Medicare Act | [ ] 315 Airplane Product Liability | [ ] 380 Other Personal Property Damage | [ ] 540 Mandamus/Other | [ ] 863 DIWC/DIWW (405 (g)) |
| [ ] 480 Consumer Credit | [ ] 152 Recovery of Defaulted Student Loan (Excl. Vet.) | [ ] 320 Assault, Libel & Slander | [ ] 385 Property Damage Product Liability | [ ] 550 Civil Rights | [ ] 864 SSID Title XVI |
| [ ] 490 Cable/Sat TV | | [ ] 330 Fed. Employers' Liability | **BANKRUPTCY** | [ ] 555 Prison Condition | [ ] 865 RSI (405 (g)) |
| [ ] 850 Securities/Commodities/Exchange | [ ] 153 Recovery of Overpayment of Vet. Benefits | [ ] 340 Marine | [ ] 422 Appeal 28 USC 158 | [ ] 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| [ ] 890 Other Statutory Actions | [ ] 160 Stockholders' Suits | [ ] 345 Marine Product Liability | [ ] 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| [ ] 891 Agricultural Acts | [ ] 190 Other Contract | [ ] 350 Motor Vehicle | **CIVIL RIGHTS** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 871 IRS-Third Party 26 USC 7609 |
| [ ] 893 Environmental Matters | [ ] 195 Contract Product Liability | [ ] 355 Motor Vehicle Product Liability | [ ] 440 Other Civil Rights | [ ] 690 Other | |
| [ ] 895 Freedom of Info. Act | [ ] 196 Franchise | [ ] 360 Other Personal Injury | [ ] 441 Voting | **LABOR** | |
| [ ] 896 Arbitration | **REAL PROPERTY** | [ ] 362 Personal Injury-Med Malpractice | [ ] 442 Employment | [ ] 710 Fair Labor Standards Act | |
| [ ] 899 Admin. Procedures Act/Review of Appeal of Agency Decision | [ ] 210 Land Condemnation | [ ] 365 Personal Injury-Product Liability | [✗] 443 Housing/ Accomodations | [ ] 720 Labor/Mgmt. Relations | |
| | [ ] 220 Foreclosure | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | [ ] 445 American with Disabilities-Employment | [ ] 740 Railway Labor Act | |
| [ ] 950 Constitutionality of State Statutes | [ ] 230 Rent Lease & Ejectment | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 446 American with Disabilities-Other | [ ] 751 Family and Medical Leave Act | |
| | | | [ ] 448 Education | [ ] 790 Other Labor Litigation | |
| | | | | [ ] 791 Employee Ret. Inc. Security Act | |

| **FOR OFFICE USE ONLY:** | Case Number: | **SACV14-00456 JVS (DFMx)** | |
|---|---|---|---|
| CV-71 (11/13) | | CIVIL COVER SHEET | Page 1 of 3 |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes  ☒ No | **A PLAINTIFF?**  Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?**  Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |

**C.1.  Is either of the following true?  If so, check the one that applies:**

☒ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2.  Is either of the following true?  If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Southern |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**    s/Nina R. Ringgold, Esq.    DATE:    3/24/14

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

## I. DEFENDANTS

**WELLS FARGO BANK, NATIONAL ASSOCIATION, As Trustee of the Morgan Stanley ABS Capital I Inc., Trustee 2005-WMC6, Mortgage Pass-Through Certificates, Series 2005-WMC6; WMC MORTGAGE LLC as successor by merger to WMC Mortgage Corp.; GENERAL ELECTRIC CAPITAL CORPORATION; COUNTRYWIDE HOME LOAN SERVICING LP; COUNTRYWIDE HOME LOANS, INC; BANK OF AMERICA, NATIONAL ASSOCIATION  as successor by merger to BAC Home Loans Servicing LP FKA Countrywide Home Loans Servicing LP; GMAC MORTGAGE, LLC; RECONTRUST; EXECUTIVE TRUSTEE SERVICES, LLC; LANDSAFE, INC.; FIRST AMERICAN TITLE COMPANY; CURTIS PATRICK EDWARDS; and DOES 1-100, inclusive.**

## V. CAUSES OF ACTION
### CAUSES OF ACTION SPECIFIED IN THE COMPLAINT:

1. **Fraud (Concealment, Misrepresentation) and Fraudulent Nondisclosure**
2. **Negligent Misrepresentation**
3. **Quiet Title**
4. **Wrongful Foreclosure  and Cancellation of Instruments**
5. **Declaratory, Injunctive, and Equitable Relief**
6. **Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq.**
7. **Violation Of The Fair Housing Act (42 U.S.C. §§ 3601-  3619)**
8. **Violation of Cal. Govt. Code § 12955 (Cal. Fair Employment and Housing Act) (FEHA)**
9. **Equal Credit Opportunity Act 15 U.S.C. § 1691**
10. **Violation of 42 U.S.C. § 1981, 1982, 1983, 1985, 1986, Thirteenth and Fourteenth Amendment**
11. **Violation of Business and Professions Code § 17200 et seq.**
12. **Violation of Cal. Civil Code § 51, 52**
13. **Violation of Cal. Civil Code § 52.1 & 52**
14. **Intentional Infliction of Emotional Distress**
15. **Negligent Infliction of Emotional Distress**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ James V. Selna _____ and the assigned Magistrate Judge is _____ Douglas F. McCormick _____ .

The case number on all documents filed with the Court should read as follows:

### SACV14-00456 JVS (DFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

March 24, 2014                                  By   Nancy Boehme
_____                                      _____
Date                                                 Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☐ Western Division | ☒ Southern Division | ☐ Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)                    NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES